Denisse O. Gastélum, SBN 282771
**GASTÉLUM LAW, APC**
**A PROFESSIONAL CORPORATION**
3767 Worsham Ave.
Long Beach, California 90808
Tel: (213) 340-6112
Fax: (213) 402-8622
Email: dgastelum@gastelumfirm.com

Christian Contreras, SBN 330269
**THE LAW OFFICES OF**
**CHRISTIAN CONTRERAS**
**PROFESSIONAL LAW CORPORATION**
360 E. 2nd St., 8th Floor
Los Angeles, California 90012
Tel: (323) 435-8000
Fax: (323) 597-0101
Email: CC@Contreras-Law.com

Attorneys for Plaintiffs,
ESTATE OF RICHARD MATUS, JR., by and through successors in interest, G.M., R.M., and Lisa Matus; G.M., a minor, by and through Guardian Ad Litem, Lisa Matus; R.M., a minor, by and through Guardian Ad Litem, Lisa Matus; LISA MATUS, individually

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ESTATE OF RICHARD MATUS, JR., by and through successors in interest, G.M., R.M., and Lisa Matus; G.M., a minor, by and through Guardian Ad Litem, Lisa Matus; R.M., a minor, by and through Guardian Ad Litem, Lisa Matus; LISA MATUS, individually,<br><br>Plaintiffs,<br><br>v.<br><br>COUNTY OF RIVERSIDE, a public entity; RIVERSIDE COUNTY SHERIFF'S DEPARTMENT; SHERIFF CHAD BIANCO, in his individual and official capacities; EDWARD DELGADO; JAMES KRACHMER; DAVID HOLM; and DOES 1 through 10, individually, jointly and severally,<br><br>Defendants. | **CASE NO.**<br><br>**COMPLAINT FOR DAMAGES**<br><br>1. Failure to Protect from Harm, Fourteenth Amendment Violation (42 U.S.C. § 1983);<br>2. Failure to Provide Medical Care, Fourteenth Amendment Violation (42 U.S.C. § 1983);<br>3. Deprivation of the Right to Familial Relationship with Decedent (42 U.S.C. § 1983);<br>4. Policies, Customs, Practices Causing Constitutional Violations (*Monell*, 42 U.S.C. § 1983);<br>5. Supervisory Liability Causing Constitutional Violations (Failure to Properly Train, Supervise and Discipline, 42 U.S.C. § 1983);<br>6. Negligence – Wrongful Death;<br>7. Negligence – Medical Malpractice;<br>8. Violation of California Government Code §845.6;<br>9. Violation of California Civil Code §52.1 (Tom Bane Act);<br>10. Intentional Infliction of Emotional Distress;<br>11. Declaratory Relief (28 U.S.C. § 2201)<br><br>**DEMAND FOR JURY TRIAL** |

**COMPLAINT FOR DAMAGES**

**COME NOW** Plaintiffs ESTATE OF RICHARD MATUS, JR., by and through successors in interest, G.M., R.M., and Lisa Matus; G.M., a minor, by and through Guardian Ad Litem, Lisa Matus; R.M., a minor, by and through Guardian Ad Litem, Lisa Matus; and LISA MATUS, individually, and allege as follows:

## I.

## INTRODUCTION

1.     This civil rights action seeks to establish the true and unequivocal facts surrounding the in-custody death of pretrial detainee Richard Matus, Jr. on August 11, 2022 at the Riverside County Sheriff's Department, Cois M. Byrd Detention Center.  This action also seeks to bring to public light the deliberate disregard for safety and protection carried out by the individual defendants in the present action.

2.     Richard Matus, Jr. was a 29-year-old loving father, son and brother who wanted nothing more in the world than to take care of his family. He was described by his family as a man who was caring, protective, responsible and, above all else, honest.  His family affectionately referred to him as "Bump" – a nickname he proudly earned from being a clumsy toddler who always had with him his stuffed elephant named Bump.[1]  At the time of Richard's death, his daughter, G.M., was 13-years-old, and his son, R.M., was 9-years-old—both far



too young to lose their father, not having him present during the different seasons of their lives.  His death has been a profound and unimaginable loss to his two young children and his beloved mother, the present Plaintiffs.

---

[1] *See* Bump the Elephant, Bump's Christmas Story (1993), available at
https://www.youtube.com/watch?v=S0sHTQfxAw4

3.     In 2022, 18 individuals died while incarcerated at the Riverside County Jails, the highest number for the County in the last 15 years.  In response to these alarming numbers, the California Department of Justice launched an investigation into the Riverside County Sheriff's Department's unconstitutional patterns and practices resulting in the record-breaking in-custody deaths.  The raw data and the per capita data make clear that the Riverside County Jails are a death sentence for any pretrial detainee.

4.     Long before Richard Matus, Jr.'s death, each of the individually named defendants from the County of Riverside and the Riverside County Sheriff's Department knew that there existed a great indifference to the safety and protection of the inmates who were in the government's custody within the Riverside County correctional facilities, including Cois M. Byrd Detention Center, Robert Presley Detention Center, Larry D. Smith Correctional Facility, John J. Benoit Detention Center and the Blythe Jail.

5.     The individuals named in the present lawsuit were repeatedly put on notice of great dangers which existed within the Riverside County correctional facilities through the long history of in-custody deaths; the record-breaking amount of fentanyl overdoses throughout all Riverside County correctional facilities; the federal class action *Quinton Gray, et al. v. County of Riverside,* case number 13-0444 VAP (OPx) (C.D. Cal.) targeting the Riverside County Sheriff's Department custody and medical staff's deliberate indifference to the safety and protection of inmates; the warnings from neutrally-selected experts regarding the Riverside County Sheriff's Department's custody and medical staff's failures amounting to constitutional violations; a court ordered Consent Decree directing the Riverside County Sheriff's Department to implement a Remedial Plan to meet the minimum level of health care necessary to fulfill the Riverside County Sheriff's Department's obligations under the Eighth and Fourteenth Amendments; and through a voluntarily entered Settlement

**COMPLAINT FOR DAMAGES**

Agreement which required that the Riverside County Sheriff's Department remedy all of the deficiencies addressed in the *Gray* class action.

6.    Despite this long history of complete disregard to inmate safety and protection, each of the individually named defendants in this lawsuit deliberately failed to take even modest actions to prevent in-custody deaths at the Riverside County correctional facilities.  Thus, by the time Richard Matus, Jr. was taken into custody and placed at the Cois M. Byrd Detention Center, the jail was infested with endemic, ongoing and unabated risks of injury or death to inmates – risks which indeed resulted in Richard Matus, Jr.'s death on August 11, 2022.

## II.

## JURISDICTION AND VENUE

7.    This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, and the Fourth and Fourteenth Amendments to the United States Constitution, and the laws and Constitution of the State of California. Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331 and 1343.

8.    This Court has the authority to grant the requested declaratory relief pursuant to 28 U.S.C. §§ 2201, as well as Federal Rules of Civil Procedure 57, including pursuant to the Court's inherent equitable powers.

9.    Venue is proper within the Central District of California pursuant to 28 U.S.C. § 1391(b)(1) and (2) because all Defendants reside within this district and the events and omissions giving rise to Plaintiffs' claims occurred within this district.

## III.

## PENDANT CLAIMS

10.    Plaintiffs have complied with the California Tort Claims Act requirements with respect to their claims arising under state law.

11.    With respect to these supplemental state claims, Plaintiffs request that this Court exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over such

claims as they arise from the same facts and circumstances which underlie the federal claims.

## IV.

## PARTIES

### A. Plaintiffs

12.     Decedent Richard Matus, Jr. was a 29-year-old father of two young children, R.M. and G.M., and the son of Lisa Matus.  At the time of his death, he was a pretrial detainee who resided in the County of Riverside, California. The claims made by Plaintiff ESTATE OF RICHARD MATUS, JR., are brought by the successors in interest, R.M., G.M, and Lisa Matus.

13.     Plaintiff R.M., a minor by and through his Guardian Ad Litem, Lisa Matus, is and was, at all times relevant hereto, a resident of the County of Riverside, California, and was the natural son of decedent Richard Matus, Jr. Plaintiff R.M. was 9 years-old when his father, Richard Matus, Jr., died in-custody at the COUNTY Jails. Plaintiff brings these claims pursuant to California Code of Civil Procedure §§ 377.20 et seq. and 377.60 et seq., which provide for survival and wrongful death actions. Plaintiff also brings his claims individually and on behalf of Decedent Richard Matus, Jr. on the basis of 42 U.S.C. §§ 1983 and 1988, the United States Constitution, federal and state civil rights law and California law.

14.     Plaintiff G.M., a minor by and through her Guardian Ad Litem, Lisa Matus, is and was, at all times relevant hereto, a resident of the County of Riverside, California, and was the natural daughter of decedent Richard Matus, Jr. Plaintiff G.M. was 13 years-old when her father, Richard Matus, Jr., died in-custody at the COUNTY Jails.  Plaintiff brings these claims pursuant to California Code of Civil Procedure §§ 377.20 et seq. and 377.60 et seq., which provide for survival and wrongful death actions. Plaintiff also brings her claims individually and on behalf of Decedent Richard Matus, Jr. on the basis of 42 U.S.C. §§ 1983 and 1988, the United States Constitution, federal and state civil rights law and California law.

15.     Plaintiff LISA MATUS, is and was, at all times relevant hereto, the natural mother of decedent Richard Matus, Jr., and at all times relevant hereto was a resident of the County of Riverside, California. Plaintiff brings these claims pursuant to California Code of Civil Procedure §§ 377.20 et seq. and 377.60 et seq., which provide for survival and wrongful death actions. Plaintiff also brings her claims individually and on behalf of Decedent Richard Matus, Jr. on the basis of 42 U.S.C. §§ 1983 and 1988, the United States Constitution, federal and state civil rights law and California law. Plaintiff also brings these claims as a Private Attorney General, to vindicate not only her rights, but others' civil rights of great importance.

**B. Defendants**

16.     Defendant COUNTY OF RIVERSIDE (hereinafter also "COUNTY") owns, operates, manages, directs and controls Defendant RIVERSIDE COUNTY SHERIFF'S DEPARTMENT (hereinafter also "RCSD"), also a separate public entity, which employs other Doe Defendants in this action. At all times relevant to the facts alleged herein, Defendant COUNTY was responsible for assuring that the actions, omissions, policies, procedures, practices and customs of its employees, including RCSD employees and the Correctional Health Services (hereinafter also "CHS") employees, complied with the laws and the Constitutions of the United States and of the State of California.  Defendant COUNTY, through RCSD and CHS, is and was responsible for ensuring the protection and safety of all persons incarcerated at the RCSD correctional facilities, including the Cois M. Byrd Detention Center (hereinafter "CBDC"), Robert Presley Detention Center (hereinafter "RBDC"), Larry D. Smith Correctional Facility (hereinafter "LSCF"), John J. Benoit Detention Center (hereinafter "JBDC"), and the Blythe Jail (hereinafter collectively "COUNTY Jails").

17.     Defendant CHAD BIANCO ("SHERIFF BIANCO"), at all times mentioned herein, is and, since November 6, 2018, has been the Sheriff-Coroner of Defendant COUNTY OF RIVERSIDE, the highest position in the COUNTY Jails. As Sheriff, Defendant BIANCO is and was responsible for the hiring, screening, training, retention, supervision, discipline, counseling, and control of all COUNTY

Jails' employees and/or agents. Defendant SHERIFF BIANCO is and was charged by law with oversight and administration of the COUNTY Jails, including ensuring the safety of the inmates housed therein. Defendant SHERIFF BIANCO also is and was responsible for the promulgation of the policies and procedures and allowance of the practices/customs pursuant to which the acts of the COUNTY Jails alleged herein were committed. Defendant SHERIFF BIANCO is being sued in his individual and official capacities.

18.     Defendant EDWARD DELGADO ("DELGADO"), at all times mentioned herein, was employed by Defendant COUNTY as the Corrections Assistant Chief of the COUNTY Jails, including the CBDC, for the COUNTY, and he was acting within the course and scope of that employment. In that capacity, Defendant DELGADO was a policy making official for the COUNTY OF RIVERSIDE. During the relevant time period, Defendant DELGADO was responsible for the  general management and control of the COUNTY Corrections Operations, with primary authority and responsibility for the operations, staff assignments, program development, personnel supervision and training, maintenance and auxiliary inmate services at the jail, subordinate only to the Sheriff and/or Undersheriff. Defendant DELGADO is being sued in his individual capacity.

19.     Defendant JAMES KRACHMER ("KRACHMER"), at all times mentioned herein, was employed by Defendant COUNTY as the Corrections Chief Deputy of the COUNTY Jails, including the CBDC, for the COUNTY, and he was acting within the course and scope of that employment. In that capacity, Defendant KRACHMER was a policy making official for the COUNTY OF RIVERSIDE. During the relevant time period, Defendant KRACHMER was responsible for the general management and control of the COUNTY Corrections Operations, with primary authority and responsibility for the operations, staff assignments, program development, personnel supervision and training, maintenance and auxiliary inmate services at the jail, subordinate to the Corrections Assistant Chief, Defendant

EDWARD DELGADO. Defendant KRACHMER is being sued in his individual capacity.

20.    Defendant DAVID HOLM (hereinafter also "HOLM") is and was at all times relevant herein the Corrections Captain at CBDC, one of the highest-level supervisory positions. During the relevant time period, Defendant HOLM was the Corrections Captain at CBDC, and was primarily responsible for assisting the Sheriff-Coroner with oversight and administration of the CBDC, including ensuring the safety of the inmates housed therein. As Corrections Captain, Defendant HOLM was responsible for supervision of RCSD and CHC employees and/or agents at the CBDC, and for the promulgation of the policies and procedures and allowance of the practices/customs pursuant to which the acts of the RCSD and CHC's employees alleged herein were committed. Defendant HOLM also directly supervised Defendant DOES 9 and 10. Defendant HOLM is being sued in his individual capacity.

21.    Defendants COUNTY OF RIVERSIDE, RIVERSIDE COUNTY SHERIFF'S DEPARTMENT, SHERIFF BIANCO, DELGADO, KRACHMER and HOLM will hereinafter be referred to as the COUNTY DEFENDANTS.

22.    Plaintiffs are ignorant of the true names and capacities of Defendants DOES 1 through 10 ("DOE Defendants") and therefore sues these Defendants by such fictitious names. Plaintiffs are informed and believe and thereon allege that each Defendant so named is responsible in some manner for the injuries and damages sustained by Plaintiffs as set forth herein. Plaintiffs will amend their complaint to state the names and capacities of each DOE Defendant when they have been ascertained.

23.    The identities, capacities, and/or nature of involvement of the defendants sued as DOES 1 through 10 are presently unknown to plaintiff who therefore sues these defendants by fictitious names. Plaintiff is informed, believes, and thereupon alleges that DOES 1 through 10 include individual law enforcement personnel and medical personnel employed by the RCSD and the COUNTY Correctional Health Services that were involved in some manner and are legally responsible for the wrongful acts and conduct alleged herein. Plaintiff will amend this complaint to

substitute the DOE Defendants' true names and capacities when they have been ascertained. Plaintiff is informed, believes, and thereupon alleges that each DOE defendant is a resident of California. On information and belief, DOES 1 through10 were and still are residents of the County of Riverside, California. DOES 1 through 10 are sued in both their individual and official capacities.

24.     At all relevant times, DOES 7 and 8 were managerial, supervisorial, training, and/or policymaking employees of Defendant COUNTY Correctional Health Services. At the time of the incident, DOES 7 and 8 were acting under color of law within the course and scope of their duties as employees for the COUNTY Correctional Health Services. They had supervisorial authority over DOES 1-10, and the COUNTY Correctional Health Services employees at the COUNTY Jails. DOES 7 and 8 were acting with the complete authority and ratification of their principal, Defendant COUNTY.

25.     At all relevant times, DOES 9 and 10 were managerial, supervisorial, training, and/or policymaking employees of Defendant COUNTY. At the time of the incident, DOES 9 and 10 were acting under color of law within the course and scope of their duties as employees for the RCSD and/or the COUNTY. They had supervisorial authority over DOES 1-10, and the employees of the RCSD. DOES 9 and 10 were acting with the complete authority and ratification of their principal, Defendant COUNTY.

26.     Each of the defendants, including the DOE defendants, caused, and is responsible for, the unlawful conduct and resulting injuries suffered by plaintiff by, among other things, personally participating in the unlawful conduct, acting jointly, or conspiring with others who did so; by ordering, authorizing, acquiescing in, or setting in motion policies, plans, or actions that led to the unlawful conduct, by failing to take action to prevent the unlawful conduct; by failing and refusing to initiate and maintain adequate training and supervision; by failing to enact policies to address the constitutional rights of protesters despite the obvious need for such a policy; and by ratifying the unlawful conduct that occurred by agents and officers

under their direction and control, including failing to take remedial or disciplinary action.

27.     Plaintiffs are informed and believe and thereon allege that each of the Defendants was at all material times an agent, servant, employee, partner, joint venturer, co-conspirator, and/or alter ego of the remaining Defendants, and in doing the things herein alleged, was acting within the course and scope of that relationship. Plaintiffs are further informed and believe and thereon allege that each of the Defendants herein gave consent, aid, and assistance to each of the remaining Defendants, and ratified and/or authorized the acts or omissions of each Defendant as alleged herein, except as may be hereinafter specifically alleged. At all material times, each Defendant was jointly engaged in tortious activity and an integral participant in the conduct described herein, resulting in the deprivation of Plaintiffs' and Decedent's constitutional rights and other harm.

28.     Plaintiff is informed, believes, and thereupon alleges that, at all times relevant hereto, defendants, and each of them, acted as the agents, servants, and employees of each of the other defendants.

29.     In doing each of the acts and/or omissions alleged herein, defendants, and each of them, acted within the course and scope of their employment.

30.     In doing each of the acts and/or omissions alleged herein, defendants, and each of them, acted under color of authority and/or under the color of law.

## V.

## FACTUAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

31.     On August 10, 2022, at approximately 11:28 p.m., Richard Matus, Jr. was found unresponsive in his cell at the Cois M. Byrd Detention Center, located at 30755-B Auld Road, Murrieta, California 92563.

32.     Upon information and belief, Richard Matus, Jr. had been experiencing a medical emergency for an appreciable amount of time prior to his death.

33.     Upon information and belief, due to the COUNTY Jails patterns and practices of not conducting proper and timely Title 15 welfare and safety checks,

Richard Matus, Jr.'s dire need for emergency medical intervention went unnoticed by the CBDC custody staff, who were responsible for monitoring and ensuring the welfare of all inmates, including Richard Matus, Jr.

34.     Upon information and belief, the CBDC custodial and medical staff administered inadequate emergency medical care to Richard Matus, Jr.

35.     Due to the great delays in securing adequate emergency medical attention for Richard Matus, Jr., and the failures on behalf of the CBDC custody staff in performing the required safety and welfare checks, Mr. Matus did not respond to medical intervention and died on August 11, 2022 at approximately 12:15 a.m.

36.     Richard Matus, Jr. was only twenty-nine years old when he died on August 11, 2022 while he was in custody at the Cois M. Byrd Detention Center. Richard Matus, Jr. was not a known drug user or involved in other illicit activity. Richard Matus, Jr. was representing himself in *pro per* and actively and competently representing himself in his criminal defense. In fact, hours before his death, Richard Matus, Jr. spoke to his mother, Plaintiff Lisa Mauts, and sounded perfectly fine— lucid, engaged, and coherent.  Nevertheless, Richard Matus, Jr. was found dead in his cell on August 11, 2022 a few hours after speaking with his mother.

37.     Richard Matus, Jr. was a pretrial detainee and therefore, innocent until proven guilty.

38.     Plaintiffs timely and properly filed tort claims with the County of Riverside pursuant to California Government Code sections 910 et seq., and this action is timely filed within all applicable statutes of limitation.

39.     This complaint may be pled in the alternative pursuant to Federal Rule of Civil Procedure 8(d).

## VI.

## FACTUAL ALLEGATIONS COMMON TO *MONELL* AND SUPERVISORIAL CAUSES OF ACTION

40.     Based upon the principles established in *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978), Defendants are liable for all injuries sustained

by Plaintiffs as set forth herein. To establish municipal liability under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978), a plaintiff must prove: (1) that [the plaintiff] possessed a constitutional right of which she was deprived; (2) that the municipality had a policy/custom/practice; (3) that this policy/custom/practice amounts to deliberate indifference to the plaintiff's constitutional right; and, (4) that the policy/custom/practice is the moving force behind the constitutional violation. *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir, 2011). The policy/custom/practice "need only cause the constitutional violation; it need not be unconstitutional per se." *Chew v. Gates*, 27 F.3d 1432, 1444 (9th Cir. 1994). Recognized paths to *Monell* liability include: (1) an unconstitutional custom, practice or policy behind the violation of rights; (2) a deliberately indifferent omission, such as a failure to train or failure to have a needed policy, and (3) a final policy-maker's involvement in or ratification of the conduct underlying the violation of rights. *Clouthier v. County of Contra Costa*, 591 F.3d 1232, 1249-1250 (9th Cir. 2010).

**A. The COUNTY Jails Experienced Their Deadliest Year in 2022.**

41.    In 2022, Defendant RIVERSIDE COUNTY SHERIFF'S DEPARTMENT correctional facilities have resulted in eighteen (18) in-custody deaths.  Prior to 2022, Riverside County had not logged more than 12 such deaths in any year since 2005. [2]

42.    Richard Matus, Jr.'s death is one of eighteen (18) in-custody deaths within the Riverside County correctional facilities during the 2022 calendar year, and was the eighth death that year:

    a.  Alicia Upton (Date of Loss: April 28, 2022; Manner of Death: "Suicide")

---

[2] *See* State of California Department of Justice Press Release: "Attorney General Bonta Launches Civil Rights Investigation into Riverside County Sheriff's Office," February 23, 2023, available at https://oag.ca.gov/news/press-releases/attorney-general-bonta-launches-civil-rights-investigation-riverside-county

**COMPLAINT FOR DAMAGES**

b. Abel Valencia Cruz (Date of Loss: May 1, 2022: Manner of Death: "Natural")

c. Justin Kail (Date of Loss: May 17, 2022; Manner of Death: "Accident-Overdose")

d. Brawn Lamar Hampton (Date of Loss: May 26, 2022; Manner of Death: "Natural")

e. Michael Vasquez (Date of Loss: May 26, 2022; Manner of Death: "Accident-Overdose")[3]

f. Yareth Villagomez (Date of Loss: June 20, 2022; Manner of Death: "Accident-Overdose")

g. Richard Edward Biscotti (Date of Loss: July 11, 2022; Manner of Death: "Natural")

h. Richard Matus Jr. (Date of Loss: August 11, 2022; Manner of Death: "Accident-Overdose")

i. Abel Anthony Chacon (Date of Loss: August 25, 2022; Manner of Death: "Accident-Overdose")

j. Octavio Zazueta (Date of Loss: August 26, 2022; Manner of Death: "Accident-Overdose")

k. Gary Roy Haneline (Date of Loss: August 27, 2022; Manner of Death: "Natural")

l. Mario Solis (Date of Loss: September 3, 2022; Manner of Death: "Accident")[4]

---

[3] Pretrial detainee Michael Vasquez was just 20-years-old at the time of his death. He had only been in the facility for six days prior to being exposed to the dangers and risks permeating the CBDP, all of which ultimately resulted in his death.

[4] Notably, while the COUNTY DEFENDANTS have reported to the Department of Justice that pretrial detainee Mario Solis' death was an "accident," what is known through the Coroner's Investigative Narrative and Autopsy Report is that Mr. Solis was indeed in a safety cell (*i.e.*, cells intended for suicidal inmates) an ingested multiple foreign objects, including a pencil, toothbrush, and plastic bags with soap. Mr. Solis ultimately died due to the pencil puncturing his right jugular vein. Upon information and belief, the COUNTY DEFENDANTS have attempted to classify this

**COMPLAINT FOR DAMAGES**

     m. Kaushal Niroula (Date of Loss: September 6, 2022; Manner of Death: "Strangulation")[5]

     n. Robert Louis Robinson (Date of Loss: September 7, 2022; Manner of Death: "Suicide/Hanging")

     o. Ulyses Munoz Ayala (Date of Loss: September 29, 2022; Manner of Death: "Homicide Willful")[6]

     p. Cynthia Heredia (Date of Loss: October 13, 2022; Manner of Death: "Pending")

     q. Katie Patton (Date of Loss: November 20, 2022 Manner of Death: "Pending")

     r. Ronald Cook (Date of Loss: December 12, 2022 Manner of Death: "Pending")

43.    The deaths include seven (7) overdoses, two (2) homicides resulting from inmate-on-inmate violence, three (3) suicides, four (4) natural cause deaths, and two (2) pending.  Seven (7) of the in-custody deaths have occurred at the Cois M. Byrd Detention Center in Murrieta, California.

44.    According to Defendant KRACHMER, from November 2021 through November 2022, the COUNTY Jails experienced 140 overdoses, with inmates overdosing at least twice a week within the COUNTY Jails.[7]

---

death as a "accident" in an effort to absolve themselves from liability arising from a *suicidal* pretrial detainee who is housed in a safety cell, but is nevertheless able to access such hazardous objects to commit suicide.  What is more is that Mr. Solis' family was not notified about his death until six (6) days had passed.

[5]  Decedent Kaushal Niroula, was a transgender HIV-positive female inmate, who brutally and repeatedly beaten and strangled by her cellmate, Ronald Sanchez—a convicted sex offender.  Ms. Niroula was killed just three days before trial. Upon information and belief, Ms. Niroula had been assisting state and federal authorities to help uncover the illegal wiretapping at the COUNTY Jails.

[6]  Pretrial detainee Ulyses Munoz Ayala was brutally killed by a *known* violent inmate, Erik Martinez, whom he was forced to share a cell with.  See "Corona Man Killed In Riverside County Jail Cell" (The Sun, September 30, 2022), available at https://www.sbsun.com/2022/09/30/corona-man-killed-in-riverside-county-jail-cell/

[7]  *See* "Families Question Suspected Fentanyl Deaths of Loved Ones Behind Bars; Riverside Co. Sheriff Reacts" (Fox11 News, November 7, 2022), available at

**B. RCSD Refuses to Comply with California Department Justice Mandates Regarding In-Custody Death Reporting Abating Transparency and Accountability.**

45.     Despite the record-braking in-custody deaths at the COUNTY Jails, and the suspicious circumstances surrounding the in-custody deaths, the COUNTY DEFENDANTS have refused to adhere to state mandates and regulations which were explicitly created to ensure accountability and transparency, including California Government Code section 12525[8] and Title 15 Minimum Standards for Local Detention Facilities, section 1046 Death in Custody.[9]

46.     The COUNTY DEFENDANTS have refused to comply with these mandates which were enacted to provide transparency and accountability when inmates and prisoners die in-custody within California correctional facilities.

47.     The COUNTY DEFENDANTS reported some of the in-custody deaths six weeks after they occurred, despite the 10-day mandate. [10]

48.     The COUNTY DEFENDANTS provided inaccurate information to the Department of Justice, classifying the pretrial detainees, who had died in their custody as "sentenced" post-convicted prisoners. [11] Upon information and belief, this

---

https://www.foxla.com/news/fentanyl-responsible-for-a-third-of-riverside-county-jail-deaths-in-2022-families-demand-answers

[8] *See* Cal. Gov. Code § 12525 ("In any case in which a person dies while in the custody of any law enforcement agency or while in custody in a local or state correctional facility in this state, the law enforcement agency or the agency in charge of the correctional facility shall report in writing to the Attorney General/DOJ, within 10 days after the death, all facts in the possession of the law enforcement agency or agency in charge of the correctional facility concerning the death.")

[9] *See* Title 15 Minimum Standards for Local Detention Facilities, Section 1046 Death ("The facility administrator, in cooperation with the health administrator, shall develop written policy and procedures to ensure that there is an initial review of every in-custody death within 30 days. The review team shall include the facility administrator and/or the facility manager, the health administrator, the responsible physician and other health care and supervision staff who are relevant to the incident.")

[10] *See* "Riverside Sheriff Failed to Report Inmate Deaths to State On time; Names of Dead Made Public" (Desert Sun, September 16, 2022), available at https://www.desertsun.com/story/news/crime_courts/2022/09/16/riverside-county-sheriffs-failed-report-inmate-deaths-state-time/8017820001/

[11] *Id.*

orchestrated misclassification of the pretrial status of the decedents was done purposely by the COUNTY DEFENDANTS so as to impose the Eighth Amendment higher degree of culpability standard, rather than the less stringent Fourteenth Amendment degree of culpability.

**C. California Department of Justice Launches Patterns and Practices Investigation into Recording Breaking In-Custody Deaths at the COUNTY Jails**

49.     On February 23, 2023, the California Department of Justice (DOJ) announced its decision to launch a formal investigation into Defendant RIVERSIDE COUNTY SHERIFF'S DEPARTMENT's unconstitutional patterns and practices resulting in record-breaking in-custody deaths at the COUNTY Jails and the use of excessive force by sheriff's deputies, disproportionately affecting Latino and African American communities.[12] The raw data and the per capita data make clear that the COUNTY Jails are a death sentence for any pretrial detainee, some of whom have died just days after being booked.[13]  For reference, San Diego County had 19 in-custody deaths in 2022, despite an average *daily* jail population of *500 more people than* Riverside County.

50.     During the press conference, the California Attorney General Rob Bonta expressed his grave concerns with regard to Defendant RIVERSIDE COUNTY SHERIFF'S DEPARTMENT: "All Californians deserve fairness and respect from the institutions that serve them […]. When some communities don't see or feel they are being treated equitably by law enforcement, it contributes to distrust and hurts public safety. Unfortunately, it is clear that — amid concerning levels of in-custody deaths and allegations of misconduct — too many families and communities in Riverside

---

[12] *See* State of California Department of Justice Press Release: "Attorney General Bonta Launches Civil Rights Investigation into Riverside County Sheriff's Office," February 23, 2023, available at https://oag.ca.gov/news/press-releases/attorney-general-bonta-launches-civil-rights-investigation-riverside-county

[13] *Id*.

**COMPLAINT FOR DAMAGES**

County are hurting and looking for answers. As part of my office's ongoing efforts to support constitutional policing, the California Department of Justice is opening a civil rights investigation into the Riverside County Sheriff's Office. Whether you have a loved one in jail or are worried about crime in your neighborhood, we all benefit when there is action to ensure the integrity of policing in our state."

51.    In response to the California Department of Justice's civil rights investigation in the COUNTY Jails, SHERIFF BIANCO issued the following offensive statement illustrating indifference towards the lives lost in his jails: "This investigation is based on nothing but false, and misleading statements, and straight-out lies from activists, including their attorneys. This will prove to be a complete waste of time and resources."[14]

**D. RCSD's History of Indifference Towards Inmates Incarcerated at the RCSD Correctional Facilities.**

52.    For well over a decade now, the COUNTY's own Grand Jury as well as several independent auditors have come to the same conclusion: dangerous deficits in health care services at the jails threaten the lives and health of the thousands of men and women they hold.

53.    The 2010-11 Grand Jury Report: Riverside County Detention Health Care Administration found systemic failures in treatment, medication management, record-keeping, and administration of forced medications, among other areas. [15]

54.    The Grand Jury released an updated report in June 2012, noting that mental health staffing has in fact decreased since its prior year's report. [16]

---

[14] *See* Riverside County Sheriff's Department YouTube video titled: "Sheriff Bianco's Response to Frivolous Civil Rights Investigation by DOL" (February 23, 2023), available at https://www.youtube.com/watch?v=6ttMVVLyfaQ

[15] *See* 2010-2011 Grand Jury Report re: Detention Mental Health Services, available at https://rivco.org/sites/g/files/aldnop116/files/Past%20Reports%20%26%20Responses/2010-2011/11mentalhealth_detentionserv.pdf

[16] *See* 2011-2012 Grand Jury Report re: Detention Mental Health Services, available at https://rivco.org/sites/g/files/aldnop116/files/Past%20Reports%20%26%20Responses/2011-2012/12mentalhealthdetention.pdf

**COMPLAINT FOR DAMAGES**

55.     On March 8, 2023, the federal class action lawsuit *Quinton Gray, et al. v. County of Riverside,* case number 13-0444 VAP (OPx) (C.D. Cal.) was filed against Defendants COUNTY OF RIVERSIDE and RIVERSIDE COUNTY SHERIFF'S DEPARTMENT. The class action alleged that the COUNTY failed to provide minimally adequate medical and mental health care to the people incarcerated in its jails, in violation of the Eighth and Fourteenth Amendments to the United Constitution, as well as discrimination against certain inmates with disabilities in violation of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act.

56.     The *Gray* operative complaint (Dkt. 150) alleged the following unconstitutional patterns and practices permeating the COUNTY Jails:

 a. RCSD, by policy and practice, maintains and runs a health care system that lacks basic elements necessary to provide constitutional care;

 b. RCSD, by policy and practice, systematically fails to identify and diagnose serious conditions, to provide timely care, to administer appropriate medications, to employ adequate staff to meet prisoners' basic needs, to maintain records that allow informed treatment decisions, to establish legally required confidentiality, and to identify and correct its own failings;

 c. RCSD, by policy and practice, maintains and runs substandard medication management and administration;

 d. RCSD, by policy and practice, is severely understaffed at the COUNTY Jails;

 e. RCSD, by policy and practice, provides substandard medical care to inmates;

 f. RCSD, by policy and practice, provides substandard mental health care to inmates;

57.     On September 2, 2014, the Court granted Plaintiffs' motion for class certification.

58.     On February 20, 2015, the parties agreed to hire neutral experts to determine whether the health care currently provided poses a significant risk of serious harm to inmates confined in the COUNTY Jails and, if so, to make recommendations for improvements that will provide the minimum care guaranteed by the U.S. Constitution.

59.     On July 15, 2015, the neutrally-appointed experts issued reports, determining that the health care failed to meet the constitutional minimum.  As such, the parties agreed to negotiate a Remedial Plan to address the identified deficiencies in the expert reports.

60.     Due to the COUNTY DEFENDANTS' ongoing failures to comply with the Consent Decree, Plaintiffs in the *Gray* class action have had to seek emergency relief from the Court to ensure that the Consent Decree is enforced.

**E. Sheriff Bianco's Indifference to the Constitutional Violations and Failures Permeating His COUNTY Jails.**

61.     A County Sheriff, like SHERIFF BIANCO "may be held liable as a supervisor under § 1983 if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011). This causal connection can exist either "by setting in motion a series of acts by others or by knowingly refusing to terminate a series of acts by others, which the supervisor knew or reasonably should have known would cause others to inflict a constitutional injury." *Id*. at 1207–08. Ninth Circuit has long held that a supervisor "need not be 'directly and personally involved in the same way as are the individual officers who are on the scene inflicting constitutional injury.'" *Id*. at 1205-06 (9th Cir. 2011), cert. den'd, 132 S. Ct. 2101 (2012) (quoting *Larez v. City of Los Angeles*, 946 F.2d 630, 645-46 (9th Cir. 1991)). "Rather, the supervisor's

participation could include his 'own culpable action or inaction in the training, supervision, or control of his subordinates,' 'his acquiescence in the constitutional deprivations of which the complaint is made,' or 'conduct that showed a reckless or callous indifference to the rights of others.'" *Id*. "We have never required a plaintiff to allege that a supervisor was physically present when the injury occurred." *Id*.

62.     The endemic, ongoing and unabated risks of injury or death to inmates incarcerated in the COUNTY Jails are well established. SHERIFF BIANCO has long been aware of these risks and harms which have resulted in injury and death to inmates incarcerated in his COUNTY Jails.  SHERIFF BIANCO's failure to take action to ameliorate these conditions constitutes deliberate indifference to the safety and health of inmates incarcerated in his COUNTY Jails.

63.     SHERIFF BIANCO has made several public statements all of which serve as illustrations of his great indifference towards the inmates, most of whom are pretrial detainees and innocent under the eyes of the law, who are in the government's custody in his COUNTY Jails.

64.     Despite the alarming trends in overdoses and in-custody deaths, SHERIFF BIANCO blames the decedents and their families for the in-custody deaths and overdoses in the COUNTY Jails – all of which are fully controlled and managed by him.

65.     On September 16, 2022, The Press-Enterprise posted the article "Sheriff Explains How 13 Riverside County Inmates Died This Year" on Facebook with the following caption: "Less than an hour after the family of a man who died in jail publicly complained about a lack of information on his death and that of 12 other Riverside County inmates this year, Sheriff Chad Bianco explained how they died." [17]

---

[17] *See* "Sheriff Explains How 13 Riverside County Inmates Died This Year" (The Press-Enterprise Facebook Page, September 16, 2022), available at:
https://www.facebook.com/page/50855317267/search/?q=chad%20bianco%2013%20riverside%20county%20inmates%20died

66.     Within fourteen hours of article being posted on Facebook, SHERIFF BIANCO went on to publicly shame and harass the families and their deceased loved ones, posing the following offensive rhetorical questions to the Facebook community and calling the Matus family attorney, Christian Contreras, a "bad" person:[18]



(1)     Did they demand that their family members not commit suicide or consume drugs while they were in custody?

(2)     Did they ever demand that their family members not commit crimes in the first place?

(3)     Did their parents ever demand they take responsibility for their own actions?

(4)     Do they ever think they played a huge part in the situation they find themselves in, other than the personal actions of their deceased loved one?

---

[18] Notably, SHERIFF BIANCO deleted the post thereafter.   Courts generally agree that the duty to preserve is triggered as soon as a potential claim is identified. *Apple Inc. v. Samsung Electronics Co., Ltd.*, 888 F. Supp. 2d 976, 991 (N.D. Cal. 2012) ("duty to preserve material evidence arises not only during litigation but also extends to that period before the litigation when a party reasonably should know that the evidence may be relevant to anticipated litigation"); *Colonies Partners, L.P. v. County of San Bernardino*, 2020 WL 1496444, at *6-7 (C.D. Cal. 2020), report and recommendation adopted, 2020 WL 1491339 (C.D. Cal. 2020).  Spoliation is "the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence, in pending or future litigation." Kearney v. Foley & Lardner, LLP, 590 F.3d 638, 649 (9th Cir.2009). *see also Leon v. IDX Systems Corp.*, 464 F.3d 951, 959, (9th Cir. 2006) ("A party's destruction of evidence qualifies as willful spoliation if the party has 'some notice that the documents were potentially relevant to the litigation before they were destroyed.'").

**COMPLAINT FOR DAMAGES**

67.   SHERIFF BIANCO also blames the inmates themselves:  "There are inmates that purposely get arrested just to smuggle drugs into jail. It is either for money, money on the outside, money or favor on the inside […] It's part of that culture of power inside the jails, and drugs are a part of it." [19]

68.   In response to the Department of Justice's recent announcement about its decision to investigate the patterns and practices existing within the COUNTY Jails, SHERIFF BIANCO expressed the following indifference to towards pretrial detainees dying at alarming rates within his correctional facilities: "Of course I'm not happy, this is going to waste our time.  Every single on of these inmate deaths was out of anyone's control.  The fact of the matter is that they just happened to be in our custody."[20]

# VII.

## PUNITIVE/EXEMPLARY DAMAGES ALLEGATIONS

### (Against individual Defendants SHERIFF CHAD BIANCO, EDWARD DELGADO, JAMES KRACHMER, DAVID HOLM, and DOES 1-10)

69.   Each Defendants' conduct as alleged herein was done with reckless disregard for human life, oppression, and malice.

70.   Long before Richard Matus, Jr.'s death, Defendants SHERIFF CHAD BIANCO, EDWARD DELGADO, JAMES KRACHMER, DAVID HOLM knew that there existed at a great indifference to the safety and protection of the inmates who were in the government's custody within the COUNTY Jails.

---

[19] *See* "California Jails Are Trying to Keep Fentanyl Out, But Inmates Are Still Dying. In Riverside County, Fentanyl is Blamed in 38% of In-custody Deaths So Far This Year," (Mercury News, September 26, 2022), available at: https://www.mercurynews.com/2022/09/26/southern-california-jails-trying-to-keep-fentanyl-out-but-inmates-are-still-dying/

[20] *See* "Kudos to Bonta for Investigating the Sheriff. Let's Hope He Moves Quickly" (The Desert Sun, March 5, 2023), available at https://www.desertsun.com/story/opinion/editorials/2023/03/05/kudos-to-bonta-for-investigating-riverside-county-sheriffs-department/69967829007/

71. Defendants SHERIFF CHAD BIANCO, EDWARD DELGADO, JAMES KRACHMER, DAVID HOLM were repeatedly put on notice of great dangers which existed within the COUNTY Jails through the long history of in-custody deaths; the record-breaking amount of fentanyl overdoses throughout all COUNTY Jails; the federal class action *Quinton Gray, et al. v. County of Riverside*, case number 13-0444 VAP (OPx) (C.D. Cal.) targeting Defendant RIVERSIDE COUNTY SHERIFF'S DEPARTMENT's custody and medical staff's deliberate indifference towards the safety and protection of inmates; the warnings from their the neutrally-selected experts regarding failures amounting to constitutional violations; a Consent Decree directing Defendant RIVERSIDE COUNTY SHERIFF's DEPARTMENT to implement a Remedial Plan to meet the minimum level of health care necessary to fulfill its obligations under the Eighth and Fourteenth Amendments; and through a Settlement Agreement which the COUNTY voluntarily entered into requiring that Defendant RIVERSIDE COUNTY SHERIFF's DEPARTMENT remedy all of the deficiencies in healthcare and disability accommodations alleged in the *Gray* class action complaint.

72. Despite this long history of complete disregard to inmate safety and protection, Defendants SHERIFF CHAD BIANCO, EDWARD DELGADO, JAMES KRACHMER, DAVID HOLM have deliberately failed to take even modest actions to prevent in-custody deaths at the COUNTY Jails which have for a very long time been infested with endemic, ongoing and unabated risks of injury or death to inmates.

73. The Defendant officers, and each of them, acted with malice and oppression and with a conscious disregard for plaintiff's rights, making the individual defendants, including DOES 1-10, liable for punitive damages.

///

///

///

///

**COMPLAINT FOR DAMAGES**

# VIII.

# FIRST CAUSE OF ACTION

## Failure to Protect from Harm,

## Violation of the Fourteenth Amendment to the United States Constitution

## (Survival Action – 42 U.S.C. § 1983)

## By Plaintiff Estate of Richard Matus, Jr. As Against DOES 1 through 10

74.     Plaintiffs reallege and incorporate herein by reference each of the preceding paragraphs of this complaint, and any subsequent paragraphs.

75.     Defendants COUNTY, RCSD and DOES 1 through 10 were on notice that their deficient policies, procedures, and practices alleged herein created substantial risk of serious harm to an inmate in decedent Richard Matus, Jr.'s position.

76.     Each Defendant could have taken action to prevent unnecessary harm to decedent Richard Matus, Jr. but refused or failed to do so.

77.     By policy, procedure, and practice, Defendants COUNTY, RCSD and DOES 1 through 10 deliberately disregarded the hazards and risks posed to persons incarcerated at the CBDC, as alleged above.  Defendants failed to take any reasonable steps to mitigate the obvious and well-known risks of harm that was attendant to housing decedent Richard Matus, Jr. at CBDC.

78.     Defendants including SHERIFF BIANCO, EDWARD DELGADO, JAMES KRACHMER, DAVID HOLM and DOES 9 and 10 also knew that deputies routinely failed to conduct required welfare and safety checks at the COUNTY Jails, including CBDC, and failed to take sufficient actions to correct this problem and ensure that necessary checks were performed.

79.     Defendant SHERIFF BIANCO failed to take corrective action, discipline, or remove the command staff at the COUNTY Jails, including CBDC, who, upon information and belief, directed the deputies to falsify safety check logs

**COMPLAINT FOR DAMAGES**

and violate the COUNTY's safety check policies. Defendant SHERIFF BIANCO ratified their actions, and the practices used under his watch.

80.     Defendants COUNTY, RCSD and DOES 1 through 10 were on notice that their policies, procedures, and practices for monitoring inmates at the COUNTY Jails, including CBDC, were inadequate and gave rise to a substantial risk of serious harm.

81.     Defendants including SHERIFF BIANCO, EDWARD DELGADO, JAMES KRACHMER, DAVID HOLM and DOES 9 and 10 failed to properly train and supervise RCSD custody and medical staff regarding policies, procedures, and practices necessary for the protection of inmates from risks and hazards existing within the COUNTY Jails, including CBDC.

82.     Defendants including SHERIFF BIANCO, EDWARD DELGADO, JAMES KRACHMER, DAVID HOLM and DOES 9 and 10's failure to correct their policies, procedures, and practices despite notice of significant and dangerous problems evidences deliberate indifference to the inmates in their care.

83.     Defendants SHERIFF BIANCO, EDWARD DELGADO, JAMES KRACHMER, DAVID HOLM and DOES 9 and 10 ratified Defendants DOES's actions and inactions amounting to constitutional violations.

84.     Defendants DOES 1 through 10's failure to conduct the required safety check of decedent Richard Matus, Jr.'s housing unit on the date of his death evidences deliberate indifference to the risk of harm to decedent Richard Matus, Jr.

85.     Defendants SHERIFF BIANCO, EDWARD DELGADO, JAMES KRACHMER, DAVID HOLM and DOES 9 and 10 ratified Defendants DOES's failure to conduct safety checks and falsification of logs.

86.     As a direct and proximate result of Defendants' conduct, the civil right of Richard Matus, Jr., as protected by the Fourteenth Amendment of the U.S. Constitution were violated.  Further, decedent Richard Matus, Jr. experienced

**COMPLAINT FOR DAMAGES**

physical pain, severe emotional distress, and mental anguish, as well as loss of his life and other damages alleged herein.

87.     Defendants subjected decedent Richard Matus, Jr. to their wrongful conduct, depriving Decedent of rights described herein, knowingly, maliciously, and with conscious and reckless disregard for whether the rights and safety of Decedent and others would be violated by their acts and/or omissions.

88.     As a direct and proximate result of Defendants' acts and/or omissions as set forth above, Decedent, through Plaintiffs herein, sustained injuries and damages.

89.     The conduct of Defendants entitles Plaintiff to punitive damages and penalties allowable under 42 U.S.C. § 1983 and as provided by law. Plaintiff does not seek punitive damages against Defendants COUNTY.

90.     Plaintiff is also entitled to reasonable costs and attorneys' fees under 42 U.S.C. § 1988, and other applicable United States and California codes and laws.

## IX.

### SECOND CAUSE OF ACTION

**Failure to Provide Medical Care,**

**Violation of the Fourteenth Amendment to the United States Constitution**

**(Survival Action – 42 U.S.C. § 1983)**

**By Plaintiff Estate of Richard Matus, Jr. As Against DOES 1 through 10**

91.     Plaintiffs reallege and incorporate herein by reference each of the preceding paragraphs of this complaint, and any subsequent paragraphs.

92.     By the actions and omissions described above, Defendants DOES 1 through 10, as alleged herein, violated 42 U.S.C. § 1983, depriving decedent Richard Matus, Jr., through Plaintiffs herein, of the following clearly established and well-settled constitutional rights protected by the Fourth and Fourteenth Amendments to the United States Constitution: Decedent's right to be free from deliberate indifference to Richard Matus, Jr.'s serious medical needs while in custody as a pretrial detainee as secured by the Fourth and/or Fourteenth Amendments.

93.     By the actions and omissions described above, Defendants DOES 1 through 10, as alleged herein, including but not limited to their failure to provide decedent Richard Matus, Jr. with appropriate emergency medical care, along with the acts and/or omissions of Defendants in failing to train, supervise, and/or promulgate appropriate policies and procedures to provide emergency medical care and life saving care to persons in their custody,  constituted deliberate indifference to Richard Matus, Jr.'s serious medical needs, health, and safety.

94.     As a direct and proximate result of Defendants' conduct, the civil right of Richard Matus, Jr., as protected by the Fourteenth Amendment of the U.S. Constitution were violated.  Further, decedent Richard Matus, Jr. experienced physical pain, severe emotional distress, and mental anguish, as well as loss of his life and other damages alleged herein.

95.     Defendants subjected Decedent to their wrongful conduct, depriving Decedent of rights described herein, knowingly, maliciously, and with conscious and reckless disregard for whether the rights and safety of Decedent and others would be violated by their acts and/or omissions.

96.     As a direct and proximate result of Defendants' acts and/or omissions as set forth above, Decedent, through Plaintiff herein, sustained injuries and damages.

97.     The conduct of Defendants entitles Plaintiff to punitive damages and penalties allowable under 42 U.S.C. § 1983 and as provided by law. Plaintiff does not seek punitive damages against Defendants COUNTY.

98.     Plaintiff is also entitled to reasonable costs and attorneys' fees under 42 U.S.C. § 1988, and other applicable United States and California codes and laws.

///

///

///

///

///

**COMPLAINT FOR DAMAGES**

# X.

## THIRD CAUSE OF ACTION

**Deprivation of the Right to Familial Relationship with Decedent,**

**Violation of the Fourteenth Amendment to the United States Constitution**

**(42 U.S.C. § 1983)**

**By Plaintiffs R.M., G.M., and Lisa Matus As Against DOES 1 through 10**

99.     Plaintiffs reallege and incorporate herein by reference each of the preceding paragraphs of this complaint, and any subsequent paragraphs.

100.   The aforementioned acts and/or omissions of Defendants DOES 1 through 10 in being deliberately indifferent to decedent Richard Matus, Jr.'s protection, safety, and serious medical needs, violating decedent Richard Matus, Jr.'s constitutional rights, and their failure to train, supervise, and/or take other appropriate measures to prevent the acts and/or omissions that caused the untimely and wrongful death of Richard Matus, Jr. deprived Plaintiffs R.M., G.M., and LISA MATUS of their liberty interests in the parent-child relationship in violation of their substantive due process rights as defined by the Fourteenth Amendments of the Constitution.

101.   All of the acts of Defendants DOES 1 through 10 and the persons involved were done under color of state law.

102.   The acts and omissions of each Defendant deprived Plaintiffs R.M., G.M., and LISA MATUS of rights, privileges, and immunities secured by the Constitution and laws of the United States, including but not limited to the Fourteenth Amendment by, among other things, depriving Plaintiffs of their right to a parent-child relationship with decedent Richard Matus, Jr. without due process of law by their deliberate indifference in denying Richard Matus, Jr. protection and safety while incarcerated at CBDC and access to medical care while suffering a medical emergency at CBDC.

103.   Defendants DOES 1 through 10 and the other involved agents and employees acted pursuant to expressly adopted official policies or longstanding

practices or customs of the COUNTY and RCSD. These include policies and longstanding practices or customs of failing to provide persons in pretrial custody who are experiencing medical emergencies access to medical care as stated above and incorporated herein.

104.   In addition, the training policies of the COUNTY and RCSD were not adequate to train its deputies, agents and employees to handle the usual and recurring situations with which they must deal with, including but not limited to encounters with individuals in pretrial custody who are experiencing medical emergencies. These Defendants and each of them knew that its failure to adequately train its COUNTY Jails custody and medical staff, including other agents and employees, to interact with individuals suffering from medical emergencies made it highly predictable that its custody and medical staff would engage in conduct that would deprive persons such as decedent Richard Matus, Jr., and thus Plaintiffs R.M., G.M., and LISA MATUS, of their rights. These Defendants were thus deliberately indifferent to the obvious consequences of their failure to train their deputies, agents and employees adequately.

105.   Defendants COUNTY and RCSD's official policies and/or longstanding practices or customs, including but not limited to its training policies, caused the deprivation of the constitutional rights of Plaintiffs R.M., G.M. and LISA MATUS and decedent Richard Matus, Jr. by each individual Defendant's official policies and/or longstanding practices or customs are so closely related to Richard Matus, Jr.'s injuries and death and thus the deprivation of the rights of Plaintiffs as to be the moving force causing those injuries.

106.   Defendant SHERIFF BIANCO, a final policymaker for the COUNTY and RCSD, ratified the actions and omissions of Defendants DOES 1 through 10, all of whom were custody and medical staff at the COUNTY Jails, including CBDC, in that he had knowledge of and made a deliberate choice to approve their unlawful acts and omissions.

///

107.   As a direct and proximate result of Defendants' conduct, the civil right of Richard Matus, Jr., as protected by the Fourteenth Amendment of the U.S. Constitution were violated.  Further, decedent Richard Matus, Jr. experienced physical pain, severe emotional distress, and mental anguish, as well as loss of his life and other damages alleged herein.

108.   Defendants subjected Decedent to their wrongful conduct, depriving Decedent of rights described herein, knowingly, maliciously, and with conscious and reckless disregard for whether the rights and safety of Decedent and others would be violated by their acts and/or omissions.

109.   As a direct and proximate result of Defendants' acts and/or omissions as set forth above, Plaintiffs sustained injuries and damages.

110.   The conduct of Defendants entitles Plaintiffs to punitive damages and penalties allowable under 42 U.S.C. § 1983 and as provided by law. Plaintiffs do not seek punitive damages against Defendants COUNTY.

111.   Plaintiffs are also entitled to reasonable costs and attorneys' fees under 42 U.S.C. § 1988, and other applicable United States and California codes and laws.

## XI.

## FOURTH CAUSE OF ACTION

**Municipal Policies, Customs, Practices Causing Constitutional Violations**

**(*Monell* - 42 U.S.C. § 1983)**

**By Plaintiff Estate of Richard Matus, Jr. As Against Defendants COUNTY OF RIVERSIDE, RIVERSIDE COUNTY SHERIFF'S DEPARTMENT and DOES 1 through 10**

112.   Plaintiffs reallege and incorporate herein by reference each of the preceding paragraphs of this complaint, and any subsequent paragraphs.

113.   The unconstitutional actions and/or omissions of Defendants DOES 1 through 10, as well as other employees or officers employed by or acting on behalf of the Defendants COUNTY and RCSD, on information and belief, were pursuant to the

**COMPLAINT FOR DAMAGES**

following customs, policies, practices, and/or procedures of Defendants COUNTY and RCSD, stated in the alternative, which were directed, encouraged, allowed, and/or ratified by policymaking officers for Defendant COUNTY and RCSD:

     a.    To deny pretrial detainees and other inmates access to timely, appropriate, competent, and necessary care for serious medical needs, requiring such inmates in crisis to remain untreated in jail instead of providing for their emergency medical needs;

     b.    To allow and encourage deputies doing regular cell checks on inmates, including in safety cells, to fail to document their actual observations of the inmate's condition and status, in violation of the County of Riverside's written policies and state law;

     c.    To allow and encourage inadequate and incompetent medical care for jail inmates and arrestees;

     d.    To hire, retain and contract for obviously inadequate medical care for jail inmates and arrestees, including creating financial incentives for custodial and medical personnel not to send inmates with emergency medical needs to a hospital;

     e.    To allow, encourage, and require medical staff, including licensed vocational nurses and registered nurses, to work outside their legal scope of practice and without appropriate supervision;

     f.    To fail to train custody staff that medical staff, including licensed vocational nurses, are not competent to assess or decide inmates' medical conditions, medical needs, or whether the inmate should be permitted to remain in the jail versus being sent to a hospital;

     g.    To allow, encourage, and require unlicensed, incompetent, inadequately trained and/or inadequately supervised staff to assess inmates' medical condition, needs, and treatment, including to decide whether or not to provide inmates with necessary emergency care and hospitalization;

h. To fail to institute, require, and enforce proper and adequate training, supervision, policies, and procedures concerning handling persons in medical crisis;

i. To cover up violations of constitutional rights by any or all of the following:

i. By failing to properly investigate and/or evaluate incidents of violations of rights, including by unconstitutional medical care at the jail;

ii. By ignoring and/or failing to properly and adequately investigate and/or investigate and discipline unconstitutional or unlawful conduct by custodial and medical personnel;

iii. By turning a blind eye to custodial and medical personnel who direct, aid, and/or assist with the distribution of hazards, including illicit drugs, into the Riverside County jails;

iv. By allowing, tolerating, and/or encouraging custodial and medical personnel to: fail to file complete and accurate reports; file false reports; make false statements; and/or obstruct or interfere with investigations of unconstitutional or unlawful conduct by withholding and/or concealing material information;

j. To allow, tolerate, and/or encourage a "code of silence" among enforcement officers, sheriff's office personnel, custodial personnel and medical personnel at the jail whereby an officer or member of the sheriff's office, or medical staff does not provide adverse information against a fellow officer, or member of the sheriff's office or the medical staff;

k. To fail to have and enforce necessary, appropriate, and lawful policies, procedures, and training programs to prevent or correct the unconstitutional conduct, customs, and procedures described in

subparagraphs (a) through (j) above, with deliberate indifference to the rights and safety of pretrial detainees, such as Decedent, and in the face of an obvious need for such policies, procedures, and training programs.

114.    The unconstitutional actions and/or omissions of Defendants DOES 1 through 10, as well as other officers employed by or acting on behalf of the COUNTY and RCSD, on information and belief, were pursuant to the following customs, policies, practices, and/or procedures of the COUNTY and the RCSD, stated in the alternative, which were directed, encouraged, allowed, and/or ratified by policymaking officers for the COUNTY and RCSD, including SHERIFF BIANCO, EDWARD DELGADO, JAMES KRACHMER and DAVID HOLM:

a.    To fail to properly and adequately hire, train, supervise, and monitor custodial and medical personnel at the jails;

b.    To fail to use appropriate and generally accepted law enforcement procedures for handling persons in medical crisis;

c.    To fail to institute, require, and enforce proper and adequate training, supervision, policies, and procedures concerning handling persons in medical crisis;

d.    To cover up violations of constitutional rights by any or all of the following:

i.    By failing to properly investigate and/or evaluate complaints or incidents of handling of persons in medical crisis;

ii.    By ignoring and/or failing to properly and adequately investigate and/or discipline unconstitutional or unlawful law enforcement activity; and

iii.    By allowing, tolerating, and/or encouraging law enforcement officers to: fail to file complete and accurate reports; file false reports; make false statements; intimidate, bias and/or "coach" witnesses to give false information and/or to attempt to bolster

officers' stories; and/or obstruct or interfere with investigations of unconstitutional or unlawful law enforcement conduct by withholding and/or concealing material information;

e.     To allow, tolerate, and/or encourage a "code of silence" among law enforcement officers whereby an officer does not provide adverse information against a fellow law enforcement officer;

f.     To allow, tolerate, and/or encourage a "code of silence" among custodial and medical personnel at the Riverside jails whereby custodial and medical personnel does not provide adverse information against a fellow staffer;

g.     To fail to have and enforce necessary, appropriate, and lawful policies, procedures, and training programs to prevent or correct the unconstitutional conduct, customs, and procedures described in subparagraphs (a) through (g) above, with deliberate indifference to the rights and safety of pretrial detainees, such as Decedent, and in the face of an obvious need for such policies, procedures, and training programs.

115.   Defendants COUNTY and RCSD, through their employees and agents, and through their policy-making supervisors, SHERIFF BIANCO, EDWARD DELGADO, JAMES KRACHMER, DAVID HOLM and DOES 9 and 10, failed to properly hire, train, instruct, monitor, supervise, evaluate, investigate, and discipline Defendants DOES 1 through 10, and other COUNTY and RCSD personnel, with deliberate indifference to the constitutional rights of decedent Richard Matus, Jr., Plaintiffs and others in similar positions, as described above, and therefore, those rights thereby violated.

116.   The unconstitutional actions and/or omissions of Defendants DOES 1 through 10, and other RCSD custody and medical staff,  as described above, were approved, tolerated, and/or ratified by policymaking officers for the COUNTY and RCSD,  including Defendants SHERIFF BIANCO, EDWARD DELGADO, JAMES

KRACHMER, DAVID HOLM and DOES 9 and 10. Plaintiff is informed and believes and thereon alleges that the details of this incident have been revealed to the authorized policymakers within the COUNTY and RCSD, and that such policymakers have direct knowledge of the fact that the death of Richard Matus, Jr. was the result of deliberate indifference to his rights to be protected and safe while in the custody of the COUNTY/RCSD, and his rights to have access to medical care when suffering a medical emergency.  Notwithstanding this knowledge, the authorized policymakers within the COUNTY and RCSD have approved of the conduct and decisions of Defendants DOES 1 through 10 in this matter, and have made a deliberate choice to endorse such conduct and decisions, and the basis for them, that resulted in the death of Richard Matus, Jr. By so doing, the authorized policymakers within the COUNTY and RCSD have shown affirmative agreement with the individual Defendants' actions and have ratified the unconstitutional acts of the individual Defendants. Furthermore, Plaintiff is informed and believes, and thereupon alleges, that Defendants SHERIFF BIANCO, EDWARD DELGADO, JAMES KRACHMER, DAVID HOLM and DOES 9 and 10, and other policy-making officers for the COUNTY and RCSD were and are aware of a pattern of misconduct and injury caused by COUNTY Jails custody and medical staff similar to the conduct of Defendants described herein, but failed to discipline culpable custody and medical staff and failed to institute new procedures and policy within the COUNTY and RCSD.

117.   The aforementioned customs, policies, practices, and procedures; the failures to properly and adequately hire, train, instruct, monitor, supervise, evaluate, investigate, and discipline; and the unconstitutional orders, approvals, ratification, and toleration of wrongful conduct of Defendants COUNTY and RCSD were a moving force and/or a proximate cause of the deprivations of decedent Richard Matus, Jr.'s clearly established and well-settled constitutional rights in violation of 42 U.S.C. § 1983. Defendants subjected decedent Richard Matus, Jr. to their wrongful

conduct, depriving decedent Richard Matus, Jr. of rights described herein, knowingly, maliciously, and with conscious and reckless disregard for whether the rights and safety of decedent Richard Matus, Jr., Plaintiffs and others would be violated by their acts and/or omissions.

118.   As a direct and proximate result of the unconstitutional actions, omissions, customs, policies, practices, and procedures of Defendants COUNTY and RCSD, as described above, decedent Richard Matus, Jr. and Plaintiffs suffered serious injuries and death, Plaintiffs are entitled to damages, penalties, costs, and attorneys' fees against Defendants COUNTY and RCSD.

## XII.

## FOURTH CAUSE OF ACTION

**Supervisory Liability Causing Constitutional Violations,**

**(Failure to Properly Train, Supervise and Discipline, 42 U.S.C. § 1983)**

**By Plaintiff Estate of Richard Matus, Jr. As Against Defendants SHERIFF CHAD BIANCO, EDWARD DELGADO, JAMES KRACHMER, DAVID HOLM and DOES 7 through 10**

119.   Plaintiffs reallege and incorporate herein by reference each of the preceding paragraphs of this complaint, and any subsequent paragraphs.

120.   At all material times, SHERIFF BIANCO, DELGADO, KRACHMER, HOLM and DOES 8 through 10 had the duty and responsibility to constitutionally hire, train, instruct, monitor, supervise, evaluate, investigate, staff, and discipline the other Defendants employed by their respective agencies in this matter, as well as all employees and agents of the COUNTY and RCSD.

121.   Defendants SHERIFF BIANCO, DELGADO, KRACHMER, HOLM and DOES 8 through 10 failed to properly hire, train, instruct, monitor, supervise, evaluate, investigate, and discipline the respective employees of their agencies, including Defendants DOES 1 through 10, and other COUNTY and RCSD personnel,

with deliberate indifference to Plaintiffs', decedent Richard Matus, Jr.'s, and others' constitutional rights, which were thereby violated as described above.

122. As supervisors, Defendants SHERIFF BIANCO, DELGADO, KRACHMER, HOLM and DOES 8 through 10 each permitted and failed to prevent the unconstitutional acts of other Defendants and individuals under their supervision and control, and failed to properly supervise such individuals, with deliberate indifference to the rights to safety and protections while incarcerated at CBDC and the rights to the serious medical needs of decedent Richards Matus, Jr. Each of these supervising Defendants either directed his or her subordinates in conduct that violated Decedent's rights, OR set in motion a series of acts and omissions by his or her subordinates that the supervisor knew or reasonably should have known would deprive decedent Richard Matus, Jr. of rights, or knew his or her subordinates were engaging in acts likely to deprive decedent Richard Matus, Jr. of rights and failed to act to prevent his or her subordinate from engaging in such conduct, or disregarded the consequence of a known or obvious training deficiency that he or she must have known would cause subordinates to violate decedent Richard Matus, Jr.'s rights, and in fact did cause the violation of decedent Richard Matus, Jr.'s rights. (*See*, Ninth Circuit Model Civil Jury Instruction 9.4). Furthermore, each of these supervising Defendants is liable in their failures to intervene in their subordinates' apparent violations of decedents Richard Matus, Jr.' rights.

123. The unconstitutional customs, policies, practices, and/or procedures of Defendants COUNTY and RCSD, as stated herein, were directed, encouraged, allowed, and/or ratified by policymaking officers for Defendants COUNTY and RCSD, including Defendants SHERIFF BIANCO, DELGADO, KRACHMER, HOLM and DOES 8 through 10, respectively, with deliberate indifference to Plaintiff's, decedent Richard Matus, Jr.'s, and others' constitutional rights, which were thereby violated as described above.

124.   The unconstitutional actions and/or omissions of Defendants DOES 1 through 10, and other COUNTY and RCSD personnel, as described above, were approved, tolerated, and/or ratified by policymaking officers for the COUNTY and RCSD, including Defendants SHERIFF BIANCO, DELGADO, KRACHMER, HOLM and DOES 8 through 10. Plaintiff is informed and believes and thereon alleges that the details of this incident have been revealed to Defendants SHERIFF BIANCO, DELGADO, KRACHMER, HOLM and DOES 8 through 10 and that such Defendant-policymakers have direct knowledge of the fact that the death of decedent Richard Matus, Jr. was not justified or necessary, but represented deliberate indifference to his rights to be protected and safe while in the COUNTY's custody and his rights to his serious medical needs, as set forth above. Notwithstanding this knowledge, on information and belief, Defendants SHERIFF BIANCO, DELGADO, KRACHMER, HOLM and DOES 8 through 10 have approved and ratified of the conduct and decisions of Defendants DOES 1 through 10 in this matter, and have made a deliberate choice to endorse such conduct and decisions, and the basis for them, that resulted in the death of Richard Matus, Jr. By so doing, Defendants SHERIFF BIANCO, DELGADO, KRACHMER, HOLM and DOES 8 through 10 have shown affirmative agreement with the individual Defendants' actions and have ratified the unconstitutional acts of the individual Defendants. Furthermore, Plaintiffs are informed and believe, and thereupon allege, that Defendants SHERIFF BIANCO, DELGADO, KRACHMER, HOLM and DOES 8 through 10 and other policymaking officers for the COUNTY and RCSD were and are aware of a pattern of misconduct and injury, and a code of silence, caused by COUNTY and RCSD custody and medical staff personnel similar to the conduct of Defendants described herein, but failed to discipline culpable law enforcement officers and employees and failed to institute new procedures and policy within the COUNTY and RCSD.

125.   The aforementioned customs, policies, practices, and procedures; the failures to properly and adequately hire, train, instruct, monitor, supervise, evaluate,

investigate, and discipline; and the unconstitutional orders, approvals, ratification, and toleration of wrongful conduct of Defendants SHERIFF BIANCO, DELGADO, KRACHMER, HOLM and DOES 8 through 10 were a moving force and/or a proximate cause of the deprivations of decedent Richard Matus, Jr.'s clearly established and well-settled constitutional rights in violation of 42 U.S.C. § 1983, as more fully set forth above.

126.   Defendants subjected decedent Richard Matus, Jr. to their wrongful conduct, depriving decedent Richard Matus, Jr. of rights described herein, knowingly, maliciously, and with conscious and reckless disregard for whether the rights and safety of decedent Richard Matus, Jr., Plaintiff and others would be violated by their acts and/or omissions.

127.   As a direct and proximate result of the unconstitutional actions, omissions, customs, policies, practices, and procedures of Defendants SHERIFF BIANCO, DELGADO, KRACHMER, HOLM and DOES 8 through 10 as described above, Plaintiff sustained serious and permanent injuries and is entitled to damages, penalties, costs, and attorneys' fees.

## XIII.

## SIXTH CAUSE OF ACTION

### Negligence – Wrongful Death

### Plaintiffs R.M., G.M., and Lisa Matus As Against All Defendants

128.   Plaintiffs reallege and incorporate herein by reference each of the preceding paragraphs of this complaint, and any subsequent paragraphs.

129.   At all times, Defendants DOES 1 through 10 owed Plaintiffs and decedent Richard Matus, Jr. the duty to act with due care in the execution and enforcement of any right, law, or legal obligation.

130.   At all times, these Defendants Plaintiffs and decedent Richard Matus, Jr. the duty to act with reasonable care.

**COMPLAINT FOR DAMAGES**

131.     These general duties of reasonable care and due care owed to Plaintiffs and decedent Richard Matus, Jr. by these Defendants include but are not limited to the following specific obligations:

  a. To summon, or transport Decedent to, necessary and appropriate emergency medical care;

  b. To refrain from unreasonably creating danger or increasing Decedent's risk of harm;

  c. To use generally accepted law enforcement procedures and tactics that are reasonable and appropriate for Decedent's status as a person in medical crisis with serious medical needs;

  d. To conduct state mandated safety and welfare checks of inmates in the custody of the COUNTY Jails;

  e. To refrain from abusing their authority granted them by law;

  f. To refrain from violating Claimant's and Decedent's rights as guaranteed by the United States and California Constitutions, as set forth above, and as otherwise protected by law.

132.     Defendants DOES 1 through 10, through their acts and omissions, breached each and every one of the aforementioned duties owed to Plaintiffs and decedent Richard Matus, Jr.

133.     Defendants COUNTY and RCSD are vicariously liable for the violations of state law and conduct of their officers, deputies, employees, and agents, including individual named defendants, under California Government Code § 815.2.

134.     As a direct and proximate result of these Defendants' negligence, Plaintiffs and decedent Richard Matus, Jr. sustained injuries and damages, and against each and every Defendant named in this cause of action in their individual capacities are entitled to relief, including punitive damages against such individual Defendants.

///

**COMPLAINT FOR DAMAGES**

# XIV.

## SEVENTH CAUSE OF ACTION

### Negligence – Medical Malpractice

### Plaintiff Estate of Richard Matus, Jr. As Against All Defendants

135.   Plaintiffs reallege and incorporate herein by reference each of the preceding paragraphs of this complaint, and any subsequent paragraphs.

136.   Decedent Richard Matus, Jr. was under the care and treatment of Defendants DOES 1 through 10, all of whom were COUNTY medical staff assigned to the COUNTY Jails, including CBDC, who were required to examine, treat, monitor, prescribe for and care for him and to provide him with medical attention when he suffered a medical emergency. These Defendants, acting within the scope and course of their employment with Defendants COUNTY and RCSD, negligently, carelessly and unskillfully cared for, attended, handled, controlled; failed to monitor and follow-up; abandoned; failed to classify, failed to appropriately diagnose and/or refer decedent Richard Matus, Jr. to specialist medical care providers; negligently failed to provide physician care; carelessly failed to detect, monitor, and follow-up with his condition; and negligently, carelessly and unskillfully failed to possess and exercise that degree of skill and knowledge ordinarily possessed and exercised by others in the same profession and in the same locality as Defendants for the benefit of their patient and dependent pre-trial detainee Richard Matus, Jr.

137.   Defendant supervisors and each of them failed to supervise, train and monitor their subordinates, to maintain proper supervision, classification and staffing, to timely provide decedent Richard Matus, Jr. emergency medical care, failed to provide adequate and competent staffing, and to ensure the care and treatment ordered for decedent Richard Matus, Jr. was provided.

138.   As a direct and legal result of the aforesaid negligence and carelessness of Defendants' actions and omissions, Plaintiffs sustained injuries and damages, and

1 against these Defendants, and each of them, are entitled to compensatory damages

2 and as applicable to this claim for Medical Negligence, to be proven at time of trial.

3      139.   Defendants COUNTY and RCSD are vicariously liable for the violations

4 of state law and conduct of their officers, deputies, employees, and agents, including

5 individual named defendants, under California Government Code § 815.2.

6 **XV.**

7 **<u>EIGHTH CAUSE OF ACTION</u>**

8 **Violation of California Government Code § 845.6**

9 **Plaintiff Estate of Richard Matus, Jr. As Against All Defendants**

10      140.   Plaintiff realleges and incorporates herein by reference each of the

11 preceding paragraphs of this complaint, and any subsequent paragraphs.

12      141.   Defendants DOES 1 through 10 was in need of immediate medical care

13 and treatment, and each failed to take reasonable action to summon immediate

14 medical care and treatment. Each such individual defendant, employed by and acting

15 within the course and scope of his/her employment with Defendants COUNTY and

16 RCSD, knowing and/or having reason to know of decedent Richard Matus, Jr.'s need

17 for immediate medical care and treatment, failed to take reasonable action to summon

18 such care and treatment in violation of California Government Code § 845.6.

19      142.   Defendants COUNTY and RCSD are vicariously liable for the violations

20 of state law and conduct of their officers, deputies, employees, and agents, including

21 individual named defendants, under California Government Code § 815.2.

22      143.   As a direct and proximate result of the aforementioned acts of these

23 Defendants, Plaintiffs and decedent Richard Matus, Jr. were injured as set forth

24 above, and their losses entitle Plaintiff to all damages allowable under California law.

25 Plaintiff sustained serious and permanent injuries and is entitled to damages,

26 penalties, costs, and attorney fees under California law, including punitive damages

27 against these individual Defendants.

28 ///

# XVI.

## NINTH CAUSE OF ACTION

### Violation of California Civil Code §52.1 (Tom Bane Act)

### Plaintiff Estate of Richard Matus, Jr. As Against All Defendants

144.   Plaintiffs reallege and incorporate herein by reference each of the preceding paragraphs of this complaint, and any subsequent paragraphs.

145.   Plaintiff brings the claims in this cause of action as survival claims permissible under California law, including Cal. Code of Civ. Proc. § 377.20 *et. seq*.

146.   By their acts, omissions, customs, and policies, Defendants, each Defendant acting in concert/conspiracy, as described above, while decedent Richard Matus, Jr. was in custody, and by threat, intimidation, and/or coercion, interfered with, attempted to interfere with, and violated Richard Matus, Jr.'s rights under California Civil Code § 52.1 and under the United States Constitution and California Constitution as follows:

    a.   The right to be free from objectively unreasonable treatment and deliberate indifference to Decedent's serious medical needs while in custody as a pretrial detainee as secured by the Fourth and/or Fourteenth Amendments to the United States Constitution and by California Constitution, Article 1, §§ 7 and 13;

    b.   The right for the familial association to be free from government interference as secured by the Fourteenth Amendments to the United States Constitution;

    c.   The right to enjoy and defend life and liberty; acquire, possess, and protect property; and pursue and obtain safety, happiness, and privacy, as secured by the California Constitution, Article 1, § 1; and

    d.   The right to emergency medical care as required by California Government Code §845.6.

147.   Defendants' violations of decedent Richard Matus, Jr.'s due process rights with deliberate indifference, in and of themselves constitute violations of the Bane Act.1[21] Alternatively, separate from, and above and beyond, Defendants' attempted interference, interference with, and violation of Richard Matus, Jr.'s rights as described above, Defendants violated Richard Matus, Jr.'s rights by the following conduct constituting threat, intimidation, or coercion:

a.   With deliberate indifference to Decedent's serious medical needs, suffering, and risk of grave harm including death, depriving decedent of necessary, life-saving care for his medical needs;

b.   With deliberate indifference to hazards that posed a risk to pretrial detainees, such as Decedent;

c.   Subjecting Decedent to ongoing violations of his rights to prompt care for his serious medical needs over days, causing immense and needless suffering, intimidation, coercion, and threats to his life and well-being;

d.   Deliberately contracting for and causing the provision of inadequate and incompetent medical health care to Riverside County jail detainees and inmates;

e.   Requiring medical staff to work outside their scope of practice, and conduct assessments, triage, and make medical and housing decisions for patients, including Decedent, they are not competent to make;

f.   Instituting and maintaining the unconstitutional customs, policies, and practices described herein, when it was obvious that in doing so, individuals such as Decedent would be subjected to violence, threat,

---

[21] *See Atayde v. Napa State Hosp.*, No. 1:16-cv-00398-DAD-SAB, 2016 U.S. Dist. LEXIS 126639, at *23 (E.D. Cal. Sept. 16, 2016) (citing *M.H. v. Cty. of Alameda*, 90 F. Supp. 3d 889, 899 (N.D. Cal. 2013); *see also, Cornell v. City and County of San Francisco*, Nos. A141016, A142147, 2017 Cal. App. LEXIS 1011 at *58, f.n. 32 (Cal. Ct. App. Nov. 16, 2017) (approving M.H., supra.); *Reese v. County of Sacramento*, 888 F.3d 1030, 1043-44 (9th Cir. 2018) (following *Cornell*); *Rodriguez v. County of L.A.,* 891 F.3d 776, 799, 802 (9th Cir. 2018) (following *Cornell*).

intimidation, coercion, and ongoing violations of rights as decedent was here.

148.   The threat, intimidation, and coercion described herein were not necessary or inherent to Defendants' violation of decedent Richard Matus, Jr.'s rights, or to any legitimate and lawful jail or law enforcement activity.

149.   Further, all of Defendants' violations of duties and rights, and coercive conduct, described herein were volitional acts; none was accidental or merely negligent.

150.   Further, each Defendant violated decedent Richard Matus, Jr.'s rights reckless disregard and with the specific intent and purpose to deprive him of his enjoyment of those rights and of the interests protected by those rights.

151.   Defendant COUNTY is vicariously liable for the violations of state law and conduct of their officers, deputies, employees, and agents, including individual named defendants, under California Government Code § 815.2.

152.   As a direct and proximate result of Defendants' violation of California Civil Code § 52.1 and of decedent Richard Matus, Jr.'s rights under the United States and California Constitutions, Plaintiffs (as successors in interest for decedent Richard Matus, Jr.) sustained injuries and damages, and against each and every Defendant is entitled to relief, including punitive damages against all individual Defendants and CFMG, and all damages allowed by California Civil Code §§ 52 and 52.1 and California law, not limited to costs attorneys' fees, and civil penalties.

## XVII.

## <u>TENTH CAUSE OF ACTION</u>

### Intentional Infliction of Emotional Distress

### Plaintiffs G.M., R.M. and Lisa Matus As Against Defendant SHERIFF CHAD BIANCO

153.   Plaintiffs reallege and incorporate herein by reference each of the preceding paragraphs of this complaint, and any subsequent paragraphs.

154.   On September 16, 2022, The Press-Enterprise posted the article "Sheriff Explains How 13 Riverside County Inmates Died This Year" on Facebook with the following caption: "Less than an hour after the family of a man who died in jail publicly complained about a lack of information on his death and that of 12 other Riverside County inmates this year, Sheriff Chad Bianco explained how they died."

155.   Within fourteen hours of article being posted on Facebook, SHERIFF BIANCO went on to publicly shame and harass the families and their deceased loved ones, posing the following offensive rhetorical questions to the Facebook community and calling the Matus family attorney, Christian Contreras, a "bad" person:

   a.   Did they demand that their family members not commit suicide or consume drugs while they were in custody?

   b.   Did they ever demand that their family members not commit crimes in the first place?

   c.   Did their parents ever demand they take responsibility for their own actions?

   d.   Do they ever think they played a huge part in the situation they find themselves in, other than the personal actions of their deceased loved one?

156.   Defendant SHERIFF BIANCO posted these comments on the public form with the intent to harass and cause Plaintiffs G.M., R.M. and Lisa Matus mental anguish and turmoil.   He knew that given the public forum nature of the Facebook post that the family of Richard Matus, Jr., including the present Plaintiffs, would read said harassing and offensive comments and that his actions would cause them great mental/psychological pain and anguish.  Notwithstanding, SHERIFF BIANCO deliberately engaged in this harassing and confrontational behavior.

157.   It was his intention to cause them great mental/psychological pain and anguish he did so through these actions.

158.   Plaintiffs G.M., R.M., and Lisa Matus seek compensatory damages incurred as a proximate result of Defendant SHERIFF BIANCO's deliberate and intentional misconduct.  Plaintiffs have suffered great emotional harm and will continue to suffer such harm in the future as a direct and proximate result of the aforementioned acts or omissions by Defendant SHERIFF BIANCO.

159.   The acts or omissions of Defendant SHERIFF CHAD BIANCO, as alleged above were willful, wanton, malicious, oppressive, and outrageous, and justify the awarding of exemplary and punitive damages against him.

160.    Defendant COUNTY is vicariously liable for the violations of state law and conduct of its officers, deputies, employees, and agents, including individual named defendants, under California Government Code § 815.2.

161.   As a direct and proximate result of these Defendant SHERIFF BIANCO's intentional conduct, Plaintiffs G.M., R.M., and Lisa Matus sustained injuries and damages, and against each and every Defendant named in this cause of action in their individual capacities are entitled to relief, including punitive damages against such individual Defendants.

## XVIII.

## ELEVENTH CAUSE OF ACTION

### Declaratory Relief

### (28 U.S.C § 2201)

### Plaintiffs As Against All Defendants

162.   Plaintiffs reallege and incorporate herein by reference each of the preceding paragraphs of this complaint, and any subsequent paragraphs.

163.   There is an actual controversy between Plaintiffs and Defendants concerning their respective rights and duties in that Plaintiffs contend that the acts of Defendants, as described herein, are in violation of federal law, and Defendants contend in all aspects to the contrary.

**COMPLAINT FOR DAMAGES**

164.    Plaintiffs are entitled to a legal declaration of their rights and Defendants' obligations under the applicable laws as alleged in this Complaint.

## XIX.

## REQUEST FOR RELIEF

Wherefore, Plaintiffs respectfully requests that the Court enter a judgment as follows:

A.    Wrongful death of Richard Matus, Jr., pursuant to Cal. Code of Civ. Proc. § 377.60 et. seq.;

B.    Loss of support and familial relationships, including loss of love, companionship, comfort, affection, society, services, solace, and moral support, pursuant to Cal. Code of Civ. Proc. § 377.60 et. seq.;

C.    Richard Matus, Jr.'s coroner's fees, funeral and burial expenses, pursuant to Cal. Code of Civ. Proc. § 377.20 et. seq.;

D.    Violation of Richard Matus, Jr.'s constitutional rights, pursuant to Cal. Code of Civ. Proc. § 377.20 et. seq. and federal civil rights law;

E.    Richard Matus, Jr.'s loss of life, pursuant to federal civil rights law;

F.    Richard Matus, Jr.'s conscious pain, suffering, and disfigurement, pursuant to federal civil rights law;

G.    General Damages, including wrongful death and survival damages, in excess of the mandatory amount for jurisdiction in the Unlimited Superior Court;

H.    Non-Economic Damages, including wrongful death and survival damages, according to proof plus all further and proper relief;

I.    Punitive damages as to individual peace officer defendants;

J.    Attorney's fees pursuant to State Law (Cal. Code Civ. Proc. § 1021.5 & private attorney general doctrine);

K.    Penalties under the Tom Bane Act;

L.    Interest; and

M.    All other damages, penalties, costs, interest, and attorneys' fees as allowed by 42 U.S.C. §§ 1983 and 1988; California Code of Civil Procedure §§ 377.20 et seq., 377.60 et seq., and 1021.5; California Civil Code §§ 52 et seq., 52.1; and as otherwise may be allowed by California and/or federal law.

Dated: March 22, 2023        GASTÉLUM LAW, APC

By: _____
Denisse O. Gastélum, Esq.
Attorneys for Plaintiffs,
ESTATE OF RICHARD MATUS, JR., by and through successors in interest, G.M., R.M., and Lisa Matus; G.M., a minor, by and through Guardian Ad Litem, Lisa Matus; R.M., a minor, by and through Guardian Ad Litem, Lisa Matus; LISA MATUS, individually

Dated: March 22, 2023        THE LAW OFFICES OF CHRISTIAN CONTRERAS
A Professional Law Corporation

By: _____
Christian Contreras, Esq.
Attorneys for Plaintiffs,
ESTATE OF RICHARD MATUS, JR., by and through successors in interest, G.M., R.M., and Lisa Matus; G.M., a minor, by and through Guardian Ad Litem, Lisa Matus; R.M., a minor, by and through Guardian Ad Litem, Lisa Matus; LISA MATUS, individually

**COMPLAINT FOR DAMAGES**

# DEMAND FOR JURY TRIAL

Plaintiffs ESTATE OF RICHARD MATUS, JR., by and through successors in interest, G.M., R.M., and Lisa Matus; G.M., a minor, by and through Guardian Ad Litem, Lisa Matus; R.M., a minor, by and through Guardian Ad Litem, Lisa Matus; LISA MATUS, individually hereby make a demand for a jury trial in this action.

Dated: March 22, 2023        GASTÉLUM LAW, APC

By: _Denisse O. Gastélum_

Denisse O. Gastélum, Esq.
Attorneys for Plaintiffs,
ESTATE OF RICHARD MATUS, JR., by and through successors in interest, G.M., R.M., and Lisa Matus; G.M., a minor, by and through Guardian Ad Litem, Lisa Matus; R.M., a minor, by and through Guardian Ad Litem, Lisa Matus; LISA MATUS, individually

Dated: March 22, 2023        THE LAW OFFICES OF CHRISTIAN CONTRERAS
A Professional Law Corporation

By: _Christian Contreras_

Christian Contreras, Esq.
Attorneys for Plaintiffs,
ESTATE OF RICHARD MATUS, JR., by and through successors in interest, G.M., R.M., and Lisa Matus; G.M., a minor, by and through Guardian Ad Litem, Lisa Matus; R.M., a minor, by and through Guardian Ad

**COMPLAINT FOR DAMAGES**