**O**

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

ESTATE OF RICHARD MATUS, JR., by and through successors in interest, G.M., R.M., and Lisa Matus; G.M., a minor, by and through Guardian Ad Litem, Candace Cortez; R.M., a minor by and through Guardian Ad Litem, Candace Cortez; LISA MATUS, individually,

Plaintiffs,

v.

COUNTRY OF RIVERSIDE, a public entity; RIVERSIDE COUNTY SHERIFF'S DEPARTMENT; SHERIFF CHAD BIANCO, in his individual and official capacities; EDWARD DELGADO; JAMES KRACHMER; DAVID HOLM; and Does 1 through 10, individually, jointly and severally,

Defendants.

Case No.: 5:23-cv-00506-MEMF-SP

**ORDER DENYING MOTION TO BIFURCATE AND STAY DISCOVERY [ECF NO. 70]**

Before the Court is the Motion to Bifurcate and Stay Discovery filed by Defendants County of Riverside, Riverside County Sheriff's Department,[1] Sheriff Chad Bianco, Edward Delgado, James Krachmer, and David Holm. ECF No. 70. For the reasons stated herein, the Court hereby **DENIES** the Motion to Bifurcate and Stay Discovery.

[1] The Motion to Bifurcate and Stay Discovery indicates that the Riverside County Sheriff's Department is not a separate entity from the County of Riverside. ECF No. 70 at 1. The Court names the parties as they are listed in the operative pleading—the Plaintiff's Second Amended Complaint. *See* ECF No. 77 (listing the County of Riverside and the Riverside County Sheriff's Department as separate, named defendants).

# I. Background

## A. Factual Background[2]

### i. The parties.

This case concerns the in-custody death of pretrial detainee Richard Matus Jr. ("Matus") SAC ¶ 1. Plaintiffs R.M. and G.M. are Matus's children, and Plaintiff Lisa Matus ("LM," with R.M. and G.M., "Plaintiffs") is his mother. *Id.* ¶ 12.

Defendant County of Riverside (the "County") owns, operates, manages, directs, and controls Defendant Riverside County Sheriff's Department ("RCSD"). *Id.* ¶ 16. The County, through RCSD, is responsible for ensuring the safety and protection of those incarcerated at RCSD correctional facilities, including but not limited to the Cois M. Byrd Detention Center (the "CBDC"). *Id.*

Defendant Chad Bianco ("Bianco") is the Sheriff-Coroner for the County. *Id.* ¶ 17. In his role, Bianco is responsible for hiring, screening, training, retention, supervision, discipline, counseling, and control of all of the County's employees who work for the various RCSD correctional facilities, including CBDC. *Id.* Bianco is also responsible for ensuring the safety of persons housed within the RCSD correctional facilities. *Id.*

Defendants Edward Delgado ("Delgado"), James Krachmer ("Krachmer"), David Holm ("Holm"), and Patrick Lindo ("Lindo") were all employed by the County and held various supervisory positions either within the RCSD correctional facilities or CBDC. *Id.* ¶¶ 18–21. Defendants Angel Rojas ("Rojas"), Mario Correa ("Correa"), and Brendon Thompson ("Thompson") were all employed by the County as corrections deputies at the RCSD correctional facilities, including the CBDC. *Id.* ¶¶ 22–24. Defendant Justin Williams was employed by the County as an investigator. *Id.* ¶ 25.

/ / /

[2] The following factual background is derived from the allegations in Plaintiffs' First Amended Complaint, ECF No. 77 ("SAC"), except where otherwise indicated. The Court makes no finding on the truth of these allegations and includes them only as background.

ii. The underlying incident on August 10, 2022 and in-custody deaths.

Matus was a pretrial detainee housed at CBDC. *Id*. ¶¶ 1, 12. On August 10, 2022, at 11:28 p.m., Matus was found unresponsive in his cell at CBDC after experiencing a medical emergency. *Id.* ¶¶ 36, 37.

Rojas, Correa, and Thompson did not notice Matus's dire need for emergency medical prevention and promoted a dangerous environment within CBDC due to RCSD's patterns and practices of failing to:

- properly utilize the cell intercoms that provided for two-way communications between inmates and custody staff (*id.* ¶ 38);
- properly utilize surveillance cameras placed within the housing modules (*id.* ¶ 39); and
- conduct proper and timely Title 15 welfare and safety checks (*id.* ¶ 40).

Ultimately, due to the delays in securing adequate medical attention and the above wrongful conduct, Matus died on August 11, 2022, at approximately 12:15 a.m. after medical intervention proved unsuccessful. *Id.* ¶ 41.

On August 11, 2022, Williams investigated the facts and circumstances surrounding Matus's death. *Id.* ¶ 43. Williams, however, failed to properly investigate Matus's death, and instead shielded Rojas, Correa, and Thompson from liability by omitting material facts and manufacturing witness recollections. *Id.* Bianco, Delgado, Krachmer, Holm, and Lindo were not only aware of Williams's wrongful conduct, but also ratified and authorized it. *Id.*

Matus's death was one of eighteen in-custody deaths within RCSD correctional facilities during the 2022 calendar year. *Id.* ¶ 49. Defendants' deliberate indifference towards protecting inmates housed at RCSD correctional facilities resulted in illicit drugs permeating the facilities, as well as several completed and attempted suicides. *Id.* ¶¶ 51, 52. Defendants knew, long before Matus's death, that there were great dangers within the RCSD correctional facilities, as well as an attitude of great indifference as to the safety and protection of inmates housed within these facilities. *Id.* ¶¶ 95, 96. Despite this knowledge, Defendants deliberately failed to take action to prevent in-custody deaths. *Id.* ¶ 97.

### B. Procedural History

On June 13, 2024, Plaintiffs filed their Second Amended Complaint ("SAC"). In their SAC, Plaintiffs allege the following causes of action: (1) Failure to Protect from Harm, Violation of the Fourteenth Amendment to the United States Constitution (Survival Action – 42 U.S.C. § 1983) against Rojas, Correa, and Thompson (SAC ¶¶ 99–125); (2) Failure to Provide Medical Care, Violation of the Fourteenth Amendment to the United States Constitution (Survival Action – 42 U.S.C. § 1983) against Rojas, Correa, and Thompson (*id.* ¶¶ 126–133); (3) Deprivation of the Right to Familial Relationship with Decedent, Violation of the Fourteenth Amendment to the United States Constitution (42 U.S.C. § 1983) against Rojas, Correa, and Thompson (*id.* ¶¶ 134–146); (4) Municipal Policies, Customs, Practices Causing Constitutional Violations (*Monell* - 42 U.S.C. § 1983) against the County and RCSD (*id.* ¶¶ 147–153); (5) Supervisory Liability Causing Constitutional Violations, (Failure to Properly Train, Supervise and Discipline, 42 U.S.C. § 1983) against the Supervisory Defendants (*id.* ¶¶ 154–162); (6) Negligence – Wrongful Death against all Defendants (*id.* ¶¶ 163–169); (7) Negligence – Medical Malpractice against all Defendants (*id.* ¶¶ 170–174); (8) Violation of California Government Code § 845.6 against all Defendants (*id.* ¶¶ 175–178); (9) Violation of California Civil Code §52.1 (Tom Bane Act – Survival Action) against all Defendants (*id.* ¶¶ 179–187); (10) Intentional Infliction of Emotional Distress against Bianco (*id.* ¶¶ 188–196); and (11) Declaratory Relief (28 U.S.C. § 2201) against all Defendants (*id.* ¶¶ 197–199).

On May 23, 2024, Defendants RCSD, the County, Bianco, Delgado, Krachmer, and Holm (the "Moving Defendants") filed the instant Motion to Bifurcate and Stay Discovery. ECF No. 70 ("Motion" or "Mot."). The Motion is fully briefed. ECF Nos. 74 ("Opposition" or "Opp'n), 76 ("Reply"). On August 7, 2024, the Court deemed this matter appropriate for resolution without oral argument and vacated the hearing. ECF No. 88; *see also* C.D. Cal. L.R. 7-15.

## II. <u>Applicable Law</u>

Under Rule 42 of the Federal Rules of Civil Procedure, a district court can, "for convenience, to avoid prejudice, or to expedite and economize," order a "separate trial of one or more separate issues [or] claims . . . ." Fed. R. Civ. P. 42(b). Courts often consider the following factors in deciding whether to bifurcate: convenience, prejudice, judicial economy, reducing the risk of confusion, and

whether the issues are clearly separable. *See, e.g., Lam Research Corp. v. Schunk Semiconductor*, 65 F. Supp. 3d 863, 865 (N.D. Cal. 2014) ("In determining whether to bifurcate, courts consider a number of factors, including whether bifurcation would promote 'efficient judicial administration,' promote convenience, simplify discovery or conserve resources, reduce the risk of juror confusion, and separability of the issues"); *see also* Rutter Group Prac. Guide Fed. Civ. Pro. Before Trial, ¶ 16:160.4. District courts are accorded broad discretion in determining whether to order separate trials under Rule 42(b). *Davis & Cox v. Summa Corp.*, 751 F.2d 1507, 1517 (9th Cir. 1985).

Additionally, the party seeking bifurcation carries the burden of proving that bifurcation is justified. *See Spectra-Physics Lasers, Inc. v. Uniphase Corp.*, 144 F.R.D. 99, 101 (N.D. Cal. 1992).

## III. Discussion

In their Motion, the Moving Defendants ask the Court to bifurcate trial and discovery of Plaintiffs' individual liability claims from Plaintiffs' *Monell* and supervisory liability claims. Mot. at 1. The Moving Defendants contend that bifurcation is appropriate because Plaintiffs' *Monell* and supervisory liability claims will fail if Plaintiffs' individual liability claims fail, and as such, trying the individual liability claims first will help preserve judicial and party resources if Plaintiffs are unsuccessful on their individual liability claims. *Id*. The Moving Defendants also requested an accompanying stay of discovery and proceedings of Plaintiffs' *Monell* and supervisory liability claims. *Id.*

Plaintiffs oppose bifurcation on the ground that their individual, *Monell*, and supervisory liability claims are so intertwined that a unified trial is necessary to avoid duplicative proceedings and inefficiency. Opp'n at 1. Plaintiffs also contend that, contrary to the Moving Defendants' argument, some bases for their *Monell* claim survive even if their individual claims do not, and as such, bifurcation will not save judicial or party resources. *Id.*

As the Court explains further below, the Court declines to bifurcate trial at this stage.[3]

/ / /

---

[3] The Court notes that Plaintiffs argue that bifurcation would be inappropriate while the Plaintiffs' motion for leave to file an amended pleading is pending. Opp'n at 5. The Court need not address this argument because Plaintiffs were granted leave to amend while this Motion was pending. *See* ECF No. 75 (granting leave to file amended pleading on June 11, 2024, before the Moving Defendants filed their Reply).

**A. Bifurcation Would Not Promote Convenience or Judicial Economy.**

Bifurcation can promote convenience and conserve judicial economy where it allows the court to "avoid[ ] a difficult question by first dealing with an easier, dispositive issue." *Danjaq LLC v. Sony Corp.* 263 F.3d 942, 961 (9th Cir. 2001). The Moving Defendants argue that Plaintiffs' individual liability claims are dispositive of their *Monell* and supervisory liability claims, and if Plaintiffs' individual liability claims fail, then their *Monell* and supervisory liability claims fail as well. Mot. at 8. Plaintiffs argue that their *Monell* claim is not entirely predicated on the individual defendants' acts, and as such, their *Monell* claim will not be fully disposed of by their individual liability claims. Opp'n at 8.

Here, the Court finds that Plaintiffs' individual liability claims are not fully dispositive of their *Monell* claim for two reasons. First, some of the *Monell* claims are not based upon the actions of individual officers. Second, even for those claims that are based upon the actions of individual officers, a jury could find that (a) a constitutional injury was suffered and (b) the individual officers were not liable due to qualified immunity, but (c) RCSD and the County are responsible under *Monell* for the constitutional injury suffered.

The Ninth Circuit considered whether a municipality was entitled to judgment as a matter of law when a jury had determined the individual officers did not violate the plaintiff's constitutional rights in *Fairley v. Luman*, 281 F.3d 913, 916 (9th Cir. 2002). Although the jury exonerated the officers of using excessive force and arresting the plaintiff without probable cause, the jury found the city liable for violating the plaintiff's civil rights by reason of policy, custom, or practice. *Id.* The Ninth Circuit noted that exoneration of the officer of "the charge of excessive force precludes municipal liability for the alleged unconstitutional use of such force." *Id.* However, that decision had "no bearing on [the plaintiff's] Fourth and Fourteenth Amendment claims against the City for arrest without probable cause and deprivation of liberty without due process" because those "alleged constitutional violations were not suffered as a result of the individual officers, but as a result of the collective inaction of the Long Beach Police Department." *Id.* at 916–17. As such, *Fairley* provides that section 1983 cases against municipalities can survive even where there is no individual liability

if the conduct that the *Monell* claim is based on is the result of *collective* action and not that of the *individual* officers.[4]

Here, as in *Fairley*, some of the bases of Plaintiffs' *Monell* claim are acts not imputed to the individual officers, but collective omissions. For example, Plaintiffs base their *Monell* claim on, in part, the following conduct: "allow[ing], encourag[ing], and requir[ing] medical staff, including licensed vocational nurses and registered nurses, to work outside their legal scope of practice and without appropriate supervision." SAC ¶ 148(i). This conduct is not conduct attributed to any of the individual officers against whom Plaintiffs base their individual liability claims on, but appears to be the result of collective action. *See generally,* SAC.

The Moving Defendants cite to *City of Los Angeles v. Heller*, 475 U.S. 796 (1986) in support of their argument that Plaintiffs' individual claims are dispositive of their *Monell* and supervisory liability claims. In *Heller*, the Supreme Court reversed the Ninth Circuit's reversal of a district court judgment dismissing the plaintiff's *Monell* and supervisory liability claims after the jury returned a special verdict finding the individual officer did not violate the plaintiff's constitutional rights. *See generally, id.* The Supreme Court noted that "[i]f a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have *authorized* the use of constitutionally excessive force is quite beside the point." *Id.* at 799 (emphasis in original). Here, *Heller* forecloses municipality liability for some of Plaintiffs' claims. For example, Plaintiffs base their first cause of action on Rojas, Correa, and Thompson's failure to properly utilize cell intercoms. SAC ¶ 101. Plaintiffs also base their *Monell* claim on the County and RCSD's custom, policy, and practice of allowing and encouraging deputy officers' failure to properly utilize cell intercoms. *Id.* ¶ 148(a).[5] If a jury finds that Rojas, Correa, and Thompson did

---

[4] The Ninth Circuit also noted that in this instance—where constitutional injury *by the municipality* was established—the fact that the individual officers were exonerated was immaterial, regardless of whether they were "exonerated on the basis of qualified immunity, because they were merely negligent, or for other failure of proof." *Id.* at 917 n.4. This makes sense. Once injury *by the municipality* is shown, lack of injury by individual officers or any other reason for their exoneration is immaterial.

[5] Similarly, Plaintiffs' supervisory liability claim is based, in part, on the Supervisory Defendants' ratification or approval of Rojas, Correa, and Thompson's acts and omissions, including (implicitly) their failure to

not violate Matus's constitutional rights by this omission, then the County and RCSD cannot be liable under *Monell* as no constitutional right would have been violated. *Heller*, 475 U.S. at 799 (finding that if a person did not suffer a constitutional injury due to the conduct of an officer, then the fact that the police department authorized such conduct is beside the point). However, *Heller* does not cover every basis of Plaintiffs' *Monell* claim, because, as the Court stated above, Plaintiffs' *Monell* claim is based, in part, on collective action and not that of individual officers.[6]

There is also another reason why the outcome of Plaintiffs' individual liability claims is not necessarily dispositive of Plaintiffs' *Monell* and supervisory liability claims. Even where *Monell* claims are based upon the actions of individual officers, where those individual officers are exonerated on the basis of qualified immunity—as opposed to a special verdict finding that there was no constitutional injury—the *Monell* claims are not precluded. The Ninth Circuit recognized this in *Quintanilla v. City of Downey*, 84 F.3d 353, 355 (9th Cir. 1996). In *Quintanilla*, the Ninth Circuit acknowledged that "a police department may be liable under § 1983 for damages caused by unconstitutional policies notwithstanding the exoneration of the individual officer whose actions were the immediate cause of the constitutional injury." *Id.* at 355. Importantly, the Court noted that "this may be true if the plaintiff established that he suffered a constitutional injury, and the officer's exoneration resulted from qualified immunity." *Id.* The only reason this rule did not apply in the case before the court was that there were no affirmative defenses raised and no jury instructions given on affirmative defenses; accordingly, the Ninth Circuit found it was not proper to conclude from the verdict in favor of the individual officers that there was a possibility that the individual officers had been exonerated on the basis of qualified immunity—as opposed to a determination that there had been no constitutional injury. Thus, if after a trial in Matus's case the individual officers are only

---

properly utilize cell intercoms. *Id.* ¶ 159 ("The unconstitutional actions and/or omissions of Defendants . . . [Rojas, Correa, and Thompson], as described above, were approved, tolerated, and/or ratified by policymaking officers for the COUNTY and RCSD, including Defendants [the Supervisory Defendants] . . . ."). As such, the supervisory liability claim is also tied, at least in part, to Plaintiffs' individual liability claim.

[6] In *Fairley*, the Ninth Circuit considered *Heller* and found that it controlled the plaintiff's excessive force claim in that the exoneration of the officer of the excessive force charge precludes municipal liability for the use of such force. *Fairley*, 281 F.3d at 916–17.

exonerated on grounds of qualified immunity—for example, pursuant to a special verdict form—none of Plaintiffs' *Monell* or supervisory liability claims would be disposed of.

Because Plaintiffs' individual liability claims are not necessarily dispositive of the *Monell* or supervisory liability claims, bifurcating the claims would not promote efficiency. Additionally, if Plaintiffs' individual liability claims either result in a verdict for Plaintiffs or exoneration under qualified immunity, there would be no efficiency gained from trying the claims separately. In that case, as Plaintiffs point out, the parties could be forced to "repeat arguments and to recall witnesses rehashing prior testimony and for the Court to preside over another trial involving the same parties and the same issues." Opp'n at 6, 9.

As such, the Court finds that, at this stage, the Moving Defendants have not shown that bifurcation would promote efficiency or preserve judicial or party resources.[7]

**B. The Risk of Prejudice and Jury Confusion Can Be Cured with Proper Instructions.**

Defendants also argue that bifurcation is warranted because there is potential undue prejudice and a risk of confusing the jury. Mot. at 7. Specifically, Defendants argue that Plaintiffs' *Monell* and supervisory liability claims are broad, as they are based on the County's policies and treatment of all inmates and inmate-related deaths, not just Matus's. *Id.* As such, Defendants argue, evidence as to these other incidents that do not involve Matus could improperly paint the individual defendants as responsible for those unrelated deaths, resulting in prejudice (guilt-by-association) and confusing the jury. *Id.* at 7–8. Plaintiffs' only response is that Defendants have not shown that they will be unfairly prejudiced absent bifurcation. Opp'n at 10.

Here, the Court finds that the risk of jury prejudice and confusion from the Plaintiffs' presentation of evidence relating to the County's policies and treatment of all inmates and inmate related deaths can be cured with effective jury instructions. As the Moving Defendants recognize,

[7] Plaintiffs also argue that Moving Defendants delayed in seeking bifurcation, but do not cite any case law that such delay somehow cuts against the Moving Defendants argument that bifurcation would preserve judicial economy. Opp'n at 7. Plaintiffs also argue that bifurcating now, as opposed to at trial, would create a practical nightmare, but do not explain *why* the timing of bifurcation would cut against convenience or the promotion of judicial economy. *Id.* However, this is of no moment, as the Court found that bifurcation would not be convenient or promote judicial efficiency on other grounds.

the Plaintiffs will have to present evidence that does *not* involve the individual defendant officers (Rojas, Correa, or Thompson) in proving their *Monell* and supervisory liability claims. *See* Reply at 5 ("Moreover, the addition of evidence solely regarding utterly unrelated in-custody deaths . . . will inevitably muddy the waters for the claims against individual defendants who were not involved in any way with those deaths . . . ."). For such evidence, the Court can easily instruct the jury to disregard this evidence in determining the liability of the individual officers, and the parties can submit proposed instructions and jury verdict forms that make this clear as well. This instruction would easily cure any potential prejudice, and it is unlikely that Rojas, Correa, or Thompson will be prejudiced by evidence that does not concern their acts or omission.

Defendants cite to *Quintanilla v. City of Downey* and *Hwang v. City & County of San Francisco* in support of their argument, but both are distinguishable. In *Quintanilla*, the plaintiff would have only recovered against the municipality under section 1983 if he could prove individual liability, 84 F.3d at 355, which, as the Court found, is not the case here. Also, there, bifurcation was necessary to avoid potential prejudice because the "plaintiff's strategy was to convince the jury to award him damages on the strength of evidence concerning police dog attacks on others." *Id.* at 356. Here, there is nothing on the record indicating that Plaintiffs' strategy is similar to that the plaintiff intended to employee in *Quintanilla*.

In *Hwang*, the district court bifurcated trial where the "majority of the evidence relevant to the federal claim against the City [would] not be relevant to the claims against the individual defendants," and as such, the evidence was "likely to be unfairly prejudicial to such individual defendants . . . ." No. C-07-2718 MMC, 2008 U.S. Dist. LEXIS 83022, *2 (N.D. Cal. Sept. 30, 2008). Here, however, Plaintiffs' *Monell* and supervisory liability claims are based, in part, on the individual defendants' (Rojas, Correa, and Thompson) conduct, and as such, evidence going to the individual liability claims will be relevant to evidence going toward the claims against the County, RCSD, Bianco, Delgado, Krachmer, Holm, and Lindo. *See* SAC ¶¶ 148 (basing *Monell* claim in part on polices and customs that encourage the omissions and acts that Plaintiffs' individual liability claims are based on), 154–162 (basing Plaintiffs' supervisory liability claim on the ratification or

approval of the omissions and acts of Rojas, Correa, and Thompson). As such, the type of prejudice present in *Hwang* that weighed in favor of bifurcation is not present here.

Nor does the Court find, at this stage, that there is a danger of prejudice in that combining the claims would suggest to the jurors that they could render a verdict in favor of the individual officers but against RCSD or the County. Reply at 5. The Moving Defendants do not explain *why* combining the claims would result in such a suggestion to the jury, and the Court does not find that, with proper instructions, any such suggestion would be implicit. *See Spectra-Physics*, 144 F.R.D. at 101 ("As the party seeking bifurcation, Uniphase has the burden of proving that bifurcation is justified given the facts in this case.").

**C. A Stay of Discovery Is Not Warranted.**

The Moving Defendants also ask the Court to stay discovery with respect to Plaintiffs' *Monell* and supervisory liability claims. Mot. at 9. The Moving Defendants' argument in favor of staying discovery hinges entirely on the Court bifurcating the action. Mot. at 12. Because the Court does not find that bifurcation is warranted, the Court will not stay discovery at this time.[8]

***

In sum, the Court finds that, at this stage, bifurcation would not promote convenience or expedite and economize the trial. Moreover, any prejudice can be cured with jury instructions. However, the Court notes that bifurcation may be appropriate at a later stage of the litigation (for example, after a motion for summary judgment, which could eliminate some claims). As such, the Court's denial of this motion is without prejudice to the Moving Defendants' right to renew their request at a later date.

/ / /

[8] The Moving Defendants appear to argue that Plaintiffs' discovery requests concerning their *Monell* and supervisory liability claims are unduly burdensome at this moment in time. Mot. at 12. To the extent that that the Moving Defendants believe that Plaintiffs' discovery requests are unduly burdensome, the Moving Defendants can bring a discovery motion on that basis.

**IV. Conclusion**

For the foregoing reasons, the Court DENIES the Motion.

IT IS SO ORDERED.

Dated: August 9, 2024

MAAMIE EWUSI-MENSAH FRIMPONG
United States District Judge